PROSKAUER ROSE LLP
Elise M. Bloom
Brian J. Gershengorn
1585 Broadway
New York, NY  10036-8299
Telephone: 212.969.3000
Fax: 212.969.2900
Email: ebloom@proskauer.com
*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X
LAUREN E. SUMMA, on behalf of herself          :
individually and on behalf of all similarly situated  :     Case No.:  07-CV-3307 (DRH) (ARL)
employees                                                      :
                                                                   :     **DEFENDANT'S OPPOSITION TO**
                                        Plaintiff,          :     **PLAINTIFF'S MOTION**
                                                                   :     **DIRECTING DEFENDANT TO**
               against                                    :     **PROVIDE PLAINTIFF WITH**
                                                                   :     **NAMES OF PUTATIVE CLASS**
HOFSTRA UNIVERSITY                          :     **MEMBERS AND AUTHORIZING**
                                                                   :     **NOTICE**
                                        Defendant.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS ................................................................................. 4

A.     HOFSTRA ................................................................................................ 4

     1.    Hourly Positions.......................................................................... 4

     2.    Extracurricular and Volunteer Opportunities............................. 5

B.     PLAINTIFFS ......................................................................................... 6

C.     THE PROPOSED CLASS FOR NOTICE ......................................... 6

ARGUMENT AND CITATION OF AUTHORITIES.................................... 8

     I.    THE NAMES AND ADDRESSES OF PUTATIVE CLASS MEMBERS SHOULD NOT BE PROVIDED AND NOTICE NOT SENT TO PUTATIVE CLASS MEMBERS SINCE PLAINTIFFS CANNOT DEMONSTRATE THEY ARE SIMILARLY SITUATED WITH RESPECT TO AN ILLEGAL POLICY OR PRACTICE TO THE GROUP THEY SEEK TO REPRESENT............................................. 8

          A.    Names And Addresses Should Not Be Provided And Facilitation Of Notice Should Not Be Granted Absent A Showing That Plaintiffs Are Similarly Situated To The Group They Seek To Have Notified. ............................................. 8

          B.    Plaintiffs' Motion For Orders Should Be Denied Because The Proposed Class Of Undergraduate And Graduate Assistants For Whom They Seek Names And Addresses And Notices Is Overbroad And They Have Failed To Demonstrate That They Are "Similarly Situated" As To A Uniform Illegal Policy. ................................................................. 9

     II.    THERE IS NO BASIS FOR TOLLING THE STATUTE OF LIMITATIONS IN THIS CASE AND EXPANDING THE PUTATIVE CLASS TO A SIX YEAR PERIOD ....................................................... 19

     III.    PLAINTIFFS' AFFIDAVITS ARE BOILER-PLATE, REPLETE WITH HEARSAY, AND SHOULD BE DISREGARDED IN RULING ON PLAINTIFFS' MOTION ........................................................................ 20

CONCLUSION.................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Cases:**

Anglada v. Linens N' Things, Inc.
No. 06-cv-12901, 2007 WL 1552511 (S.D.N.Y. May, 29, 2007) ................................................. 8

Barfield v. NYC Health & Hosps. Corp.,
No. 05-cv- 6319, 2005 U.S. Dist. LEXIS 28884 (S.D.N.Y. Nov. 17, 2005) ............................. 22

Brown Univ.,
342 N.L.R.B. 483 (2004) ........................................................................................................ 13

Diaz v. Elec. Boutique of Am., Inc.,
No. 04-cv-0849E, 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ................... 8, 11, 15, 17, 18, 23

Evancho v. Sanofi-Aventis U.S. Inc.,
No. 07-cv-2266, 2007 U.S. Dist. LEXIS 93215 (D.N.J. Dec. 18, 2007) ............................... 8, 10

Fasanelli v. Heartland Brewery, Inc.
516 F. Supp. 2d 317 (S.D.N.Y. 2007) .................................................................................... 20

Firgeleski, Jr. v. Hubbel, Inc.,
No. 99-9134, 2000 U.S. App. LEXIS 11023 (2d Cir. 2000) ..................................................... 22

Flores v. Osaka Health Spa, Inc.,
No. 05-cv-962, 2006 U.S. Dist. LEXIS 11378 (S.D.N.Y. Mar. 16, 2006) ................................ 21

Hoffman v. Sbarro, Inc.,
982 F. Supp. 249 (S.D.N.Y. 1997) .............................................................................. 8, 10, 20

Hollander v. Am. Cyanamid Co.,
172 F. 3d 192 (2d Cir. 1999) .................................................................................................. 21

Iglesias-Mendoza v. La Bell Farm, Inc.,
239 F.R.D. 363 (S.D.N.Y. 2007) ............................................................................................ 19

Jacobsen v. Stop & Shop Supermarket Co.,
2004 U.S. Dist. LEXIS 17031 (S.D.N.Y. Aug. 27, 2004) ......................................................... 10

Marshall v. Regis Educational Corp.,
666 F.2d 1324 (10th Cir. 1981) .............................................................................................. 13

Mike v. Safeco Ins. Co.,
274 F. Supp. 2d 216 (D. Conn. 2003) .................................................................. 9, 10, 14, 17, 18

Morisky v. Pub. Serv. Elec. & Gas Co.,
111 F. Supp. 2d 493, 498-99 (D.N.J. 2000) .............................................................................. 15

Myers v. Hertz Corp.,
No. 02-cv-4325, 2007 U.S. Dist. LEXIS 53572 (E.D.N.Y. Jul. 24, 2007) ..................... 16, 18, 23

Prizmic v. Armour, Inc.,
No. 05-cv-2503, 2006 U.S. Dist. LEXIS 42627 (E.D.N.Y. Jun. 12, 2006) ................ 8, 10, 11, 20

Seever v. Carrols Corp.,
No. 02-cv-6580L, 2007 U.S. Dist. LEXIS 92379 (W.D.N.Y. Dec. 17, 2007) .......................... 22

Scholtisek v. Eldre Corp.,
229 F.R.D. 381 (W.D.N.Y. 2005) ................................................................................ 8, 10, 20

Sherril v. Sutherland Global Servs., Inc.,
487 F. Supp. 2d 344, 350 (W.D.N.Y. 2007) ........................................................................ 16

Silverman v. SmithKline Beechham,
No. 06-cv-7272, 2007 U.S. Dist. LEXIS 80030 (C.D. Cal. Oct. 15, 2007) ............................... 23

Star Ins. Co. v. Hazardous Elimination Corp.,
No. 05-cv-4762, 2007 U.S. Dist. LEXIS 6574 (E.D.N.Y. Jan. 30, 2007) .................................. 21

Tips Exports, Inc. v. Music Mahal, Inc.,
No. 01-cv-5412, 2007 U.S. Dist. LEXIS 84399, at * (E.D.N.Y. Mar. 9, 2007) ......................... 22

Walling v. Portland Terminal Co.,
330 U.S. 148 (1947) ........................................................................................................... 12

## STATUTES AND OTHER AUTHORITIES

29 U.S.C. § 216(b) ............................................................................................................... 8

29 U.S.C. § 203(g) ............................................................................................................... 12

29 C.F.R. § 516.4 ................................................................................................................. 19

DOL Opinion Letter Student Externs/FLSA Applicability,
FLSA 2006-12 (Apr. 6, 2006) ................................................................................................ 12

DOL Letter, 21 BA 941 (Sept. 13, 1967) ............................................................................... 12

Labor Department Wage & Hour Field Operations Handbook § 10b03(e) ........................... 12-13

## PRELIMINARY STATEMENT

Defendant Hofstra University ("Hofstra") offers its undergraduate and graduate students thousands of opportunities to gain valuable educational and work experiences. These types of opportunities vary greatly from hourly-paid positions, which are paid in compliance with federal wage-hour laws, to extracurricular and internship positions, like residential assistants or sports team managers, that are provided solely to enhance the students' educational experience and is not work that would otherwise be performed by paid non-student employees. In keeping with the U.S. Department of Labor's longstanding enforcement policy and guidelines, Hofstra does not (and properly need not) classify or treat this second category of student assistants as "employees" covered by the Fair Labor Standards Act ("FLSA").

Named Plaintiff, Lauren Summa and the three opt-ins, Emily DeGaglia, Lynn Ann Sumner and Dawn Sumner ("Plaintiffs"), former undergraduate and graduate students who served as Football Team Managers - suggest that Hofstra has improperly denied them overtime and minimum wage compensation under the FLSA. They also suggest that Hofstra failed to post the required FLSA posters and, as a consequence, the two year statute of limitations applicable to FLSA claims should be equitably tolled and extended to six (6) years.

Based on a few boilerplate affidavits, several unsupported factual assertions, and reliance on what they characterize as a "fairly lenient" standard, Plaintiffs ask this Court to direct Defendant to provide the names and addresses and send notices to putative class members consisting of all of Hofstra's thousands of graduate and undergraduate assistants, whether hourly-paid employees or unpaid intern assistants, who have held any such position within the last six (6) years. The Court should not direct that such information be provided or authorize

such notice since there has been no showing that these individuals are similarly situated to each other or to the Plaintiffs.

First, the group of individuals for whom they seek information and request the Court to authorize notice is overly broad and diverse.  Plaintiffs have conflated two distinct categories of students and have failed to show that these alleged putative class members are similarly situated either to the other class members in their category or to the putative class members in the other distinct category.  Plaintiffs seek information regarding <u>all</u> students who they characterize as having held assistantships within the past six (6) years.  But as noted above, their definition lumps together two distinct categories:  (i) hourly-paid student employees who are subject to the FLSA; and (ii) students who participate in extracurricular activities or internships, for which they typically receive only a stipend and who are not "employees" as defined by the FLSA.

As to the first category, Plaintiffs allege that Hofstra failed to pay them in accord with Hofstra's policies and in some instances in violation of the FLSA.  An employer's alleged failure to pay employees in accord with its own policies does not raise an FLSA issue or warrant the issuance of notices regarding an FLSA opt-in class <u>unless</u> the alleged failure resulted in a violation of the Act.  In any event, as these assistants have held a multitude of positions performing diverse tasks working different schedules under different supervisors, Plaintiffs have not and cannot demonstrate that all these paid employee assistants are similarly situated such that notice is appropriate.  Rather, the Court will be forced to conduct an individualized determination of each employee's weekly schedule, hours worked and compensation paid to determine if a violation occurred, and if so, as to which individual(s), in which job, working for which supervisor.

As to the second category of student assistants, Plaintiffs appear simply to presume that they are subject to the Act and thus were not paid in accord with its dictates. Plaintiffs ignore, however, that student assistants whose assignments meet certain criteria are regarded by the U.S. Department of Labor as not being "employees" as defined by the Act and not subject to its dictates. These assistants perform a myriad of different assignments and roles. Because the assignments and roles are different, Plaintiffs may not properly group them together simply by contending that all of them have been misclassified. It is Plaintiffs' burden – which they have failed to meet – to present evidence demonstrating that the current and former student interns for whom they seek names and addresses and notices, and effectively conditional certification to represent are similarly situated in respect to the duties that they performed. Here, the determination of whether each student was an "assistant" and therefore not subject to the FLSA or an "employee" will require an intense, individualized factual analysis as to each potential plaintiff's position. Issuing notice to such a broad group will only enmesh the Court in a procedural and evidentiary quagmire that will make the determination of the Plaintiffs' as well as Hofstra's rights more, rather than less difficult and expensive. This is contrary to one of Congress' stated objectives in enacting collective actions, which is more streamlined and efficient resolution of claims.

Further, even if Plaintiffs could demonstrate some level of similarity as to either classification, they cannot plausibly contend that both groups are similarly situated. Not only are the duties performed by these two groups distinctly different, but the Hofstra policies at issue also are distinctly different. The issue with respect to the hourly-paid student employees will be whether Hofstra correctly applied the Act's requirements as to each. In contrast, the threshold issue with respect to the extracurricular positions or volunteer assistants is whether, as to each

3

type of opportunity, they are subject to the Act at all. Even the "fairly lenient standard" invoked by Plaintiffs does not allow for a single class comprised of would-be plaintiffs who performed diverse tasks, were classified differently by their employer and the determination of whose rights requires consideration and application of markedly different legal concepts.

Finally, there is no basis for tolling the statute of limitations under the FLSA to six years. Plaintiffs' unsupported suggestion that Hofstra failed to "post adequate notice of rights under the FLSA" is simply untrue. Hofstra has and continues to post all applicable federal and state notices, including all FLSA postings, at appropriate locations throughout its campus. This includes the Human Resources Office, where all students were required to go to fill out necessary paperwork for all paid and unpaid jobs, as well as the Student Center, where open job opportunities are posted, and the Payroll Office.

## STATEMENT OF FACTS

### A. HOFSTRA

Hofstra is a nationally-recognized not-for-profit educational institution. (9/25/07 Declaration of Julie Block ("Block Decl."), ¶ 7). Hofstra currently enrolls approximately 8,000 undergraduate and 4,000 graduate students. (Affidavit of Evelyn Miller-Suber ("Miller-Suber Aff."), ¶ 3).

#### 1. Hourly Positions

Hofstra employs thousands of students in positions that are paid in compliance with federal wage-hour laws. These include, but are not limited to, such jobs as office assistants, who do office tasks such as make photocopies, run errands, and answer phones, computer assistants, web master assistants, events managers, resident safety representatives, events security, student

safety patrol, lifeguards, ushers, survey takers, and tutors.   All student employees are compensated at hourly rates pursuant to applicable law (Miller-Suber Aff., ¶ 6).

As to the hourly paid positions, the general rule is that students should only work one job at a time.  During the school year, students generally are not supposed to work more than 25 hours a week.  During the summer session and January intersession, students are permitted to work longer hours.  (See Miller-Suber Aff., Ex. A, Student Hours Posting).

### 2.   Extracurricular and Volunteer Opportunities

Hofstra also provides a broad range of ancillary and extracurricular programs that complement its primary academic functions.  (Miller-Suber Aff., ¶ 9).  These programs provide students with the opportunity to gain additional experiences to enhance their professional development outside the classroom and are intended to provide benefits to students.  (Miller-Suber Aff., ¶ 9).   The extracurricular and volunteer opportunities include positions such as athletic team managers, resident assistants, student mentors, orientation counselors, musicians in the band or orchestra and singers/performers for various University events.  (Miller-Suber Aff., ¶ 10).  These positions have long been viewed as exempt from coverage under the FLSA (as described more fully below), because these students are not "employed" and, hence, not "employees" under the FLSA.

In these extracurricular and volunteer positions, undergraduate and graduate assistants perform a multitude of different tasks depending upon:  (i) their department; (ii) the supervisor with whom they work; (iii) the subject matter with which they interact; (iv) their level of education and experience; and (v) their level of achievement.  (Miller-Suber Aff., ¶ 12).  The responsibilities vary greatly by position. (Miller-Suber Aff., ¶ 12).  While some of them receive a stipend in connection with their work, this stipend is not a payment for services rendered. Rather, it is intended to cover additional incidental expenses that may be incurred by students in

the course of holding one of these positions since the duties associated with these opportunities do not always occur at fixed times and are driven by the particular event  (Miller-Suber Aff., ¶ 9).

## B.   **PLAINTIFFS**

Plaintiff Lauren Summa is the named plaintiff.  Her claims arise out of her position as the Football Team Manager in 2006 (Compl., ¶ 16).   Summa was enrolled at Hofstra as an undergraduate from the Fall 2003 semester through the Spring 2006 semester.  In the Fall 2006 semester, Summa enrolled as a graduate student in Hofstra's School of Communications.[1] (Block Decl., ¶ 6).  As Football Team Manager, Summa received a $700 stipend (Compl., ¶ 16), and her primary duties consisted of assisting the football coaches before, during, and after practices.  (Compl., ¶ 17).

In addition to Summa, former Hofstra students Emily DeGaglia, Lynn Ann Sumner, and Dawn Sumner have filed consents.  Like Summa, all three allege that they, too, were Football Team Managers while students at Hofstra for which they received stipends.  (Block Decl., ¶ 4; Compl., ¶¶ 12, 16).  All four also held hourly paid positions for which they were compensated pursuant to applicable law.  (Miller-Suber Aff., ¶ 8).

## C.   **THE PROPOSED CLASS FOR NOTICE**

These plaintiffs seek the names and addresses and that notice be sent to thousands of undergraduate and graduate assistants, whether classified by Hofstra as "employees" or as

---

[1] Summa incorrectly classified herself as an "undergraduate Assistant Football Team Manager" in the Complaint. (Compl., ¶ 12).  In fact, Summa was enrolled as a graduate student at Hofstra during the Fall 2006 semester when she was a Football Team Manager.  See Block Decl., Ex. B, Plaintiff's academic transcript.

unpaid assistants, who held such positions at Hofstra for a six (6) year period from August 9, 2002 to the present.[2]

---

[2] As set forth in the Miller-Suber Affidavit, this conceivably could include more than 9,000 students for just a three (3) year period. This number increases exponentially for each year. If Hofstra were required to provide this information for all undergraduate and graduate assistants, for a six (6) year period as requested by Plaintiff, this would be an extremely burdensome task.

**ARGUMENT**

I.   **THE NAMES AND ADDRESSES OF PUTATIVE CLASS MEMBERS SHOULD NOT BE PROVIDED AND NOTICE NOT SENT TO PUTATIVE CLASS MEMBERS SINCE PLAINTIFFS CANNOT DEMONSTRATE THEY ARE SIMILARLY SITUATED WITH RESPECT TO AN ILLEGAL POLICY OR PRACTICE TO THE GROUP THEY SEEK TO REPRESENT.**

   A.   **Names And Address Should Not Be Provided And Facilitation Of Notice Should Not Be Granted Absent A Showing That Plaintiffs Are Similarly Situated To The Group They Seek To Have Notified.**

A court may facilitate notice only if plaintiffs demonstrate that they are sufficiently "similarly-situated" to the opt-in plaintiffs. See Prizmic v. Armour, Inc., No. 05-cv-2503, 2006 U.S. Dist. LEXIS 42627, at *4 (E.D.N.Y. June 12, 2006); Anglada v. Linens N' Things, Inc. No. 06-cv-12901, 2007 WL 1552511, at *4 (S.D.N.Y. May 29, 2007).  Plaintiffs bear the burden of making this showing.  See, e.g., Diaz v. Elecs. Boutique of Am., Inc., No. 04-cv-0849E, 2005 WL 2654270, at *3 (W.D.N.Y. Oct. 17, 2005); Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997).

The decision to authorize notice to thousands of individuals is by no means automatic, and the Court has broad discretion to determine whether notice is appropriate.  Prizmic, 2006 U.S. Dist. LEXIS 42627, at *4; see also Evancho v. Sanofi-Aventis U.S. Inc., No. 07-cv-2266, 2007 U.S. Dist. LEXIS 93215, at *7 (D.N.J. Dec. 18, 2007).   Under 29 U.S.C. § 216(b), Plaintiffs must present "substantial allegations" to demonstrate that "'[they] and potential plaintiffs together were victims of a common policy or plan that violated the law.'"  Scholtisek v. Eldre Corp., 229 F.R.D. 381, 387 (W.D.N.Y. 2005) (quoting Hoffman v. Sbarro, Inc., 982 F. Supp. at 261) (emphasis added).  This showing requires "actual evidence of a factual nexus between [Plaintiffs'] situation and those that [they claim] are similarly situated, rather than mere

conclusory allegations." <u>Prizmic</u>, 2006 U.S. Dist. LEXIS 42627, at *7 (emphasis added); <u>accord</u>,

<u>Diaz</u>, 2005 WL 2654270 at *3.

Moreover, the Court should exercise great caution in deciding whether it is feasible or

desirable to manage under one docket the individualized cases of disparately situated student

undergraduate and graduate assistants to determine whether they are employees within the

meaning of the FLSA. <u>See</u>, <u>e.g.</u>, <u>Mike v. Safeco Ins. Co.</u>, 274 F. Supp. 2d 216, 221 (D. Conn.

2003) (noting that court would have to engage in an "ad hoc inquiry" for each proposed plaintiff

to identify similarly situated individuals in denying motion to proceed as collective action and

authorize notice).

The individuals for whom Plaintiffs seek names and addresses and request that notice be

sent are not similarly situated to each other or to Plaintiffs.  Accordingly, Plaintiffs' request

should be denied.

> **B.      Plaintiffs' Motion For Orders Should Be Denied Because The Proposed Class Of Undergraduate And Graduate Assistants For Whom They Seek Names And Addresses And Notices Is Overbroad And They Have Failed To Demonstrate That They Are "Similarly Situated" As To A Uniform Illegal Policy.**

Plaintiffs have conflated two distinct categories, hourly-paid student employees and

students receiving stipends for extracurricular or volunteer activities, and have failed to present

evidence that these diverse groups are similarly situated and appropriately should be sent notice

of this action.

> **1.      Plaintiffs Cannot Demonstrate that the Student Employees Whom Hofstra Classifies and Treats as "Employees" Subject to the FLSA Are Similarly Situated.**

Invoking what they characterize to be a "'a fairly lenient standard'" (Pls.' Mem. at 6

(citation omitted)), Plaintiffs claim that they have demonstrated that the putative class members

are similarly situated by alleging that <u>all</u> student assistants are subject to common University-

wide policies that Hofstra allegedly breached. According to Plaintiffs, under Hofstra's policies all assistants are to be paid an hourly wage, may work only 25 hours a week and are entitled to time and a half when they work authorized overtime. (Pls.' Mem. at 7.) Plaintiffs suggest they meet the FLSA's fairly lenient standard for the issuance of notice by their averments that Hofstra failed to observe its own policies. (Pls.' Mem. at 7-8).

As demonstrated, however, Hofstra recognizes and classifies student assistants performing work that would otherwise be performed by paid non-student employees as "employees" subject to the FLSA and compensates them in accord with the Act's dictates. (Miller-Suber Aff., ¶ 6). To be entitled to have notices sent to this class of assistants, Plaintiffs must demonstrate that: (i) Hofstra violated the Act with respect to these employees; and (ii) assuming there were any violations, that the employees were similarly situated to one another vis-à-vis the application of a uniform, illegal policy or practice. See Mike, 274 F. Supp. 2d at 220 (denying motion to proceed as a collective action and noting that for the purposes of authorizing notice plaintiffs must demonstrate that they "were victims of a common policy or plan that violated the law.") (quoting Hoffman v. Sbarro, Inc., 982 F. Supp. at 261); accord Scholtisek, 229 F.R.D. at 387 (same); Jacobsen v. Stop & Shop Supermarket Co., No. 02-cv-5915, 2003 U.S. Dist. LEXIS 7988, at *3 (S.D.N.Y. May 14, 2003) (same). "In other words, the court must be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits in th[e] case." Mike, 274 F. Supp. 2d at 220. Plaintiffs have failed to demonstrate the above requirements that would justify class notices being sent.

Plaintiffs' showing, which relies solely on conclusory allegations to the effect that all the assistants, irrespective of what their jobs and duties consisted of, were not paid in accord with the

10

Act does not meet this standard. Prizmic, 2006 U.S. Dist. LEXIS 42627, at *6; see also Evancho, 2007 U.S. Dist. LEXIS 93215, at * 7 ("[u]nsupported assertions of widespread violations are not sufficient"). Plaintiffs claim they, and other unidentified students, were not paid appropriately when they worked multiple jobs and that, contrary to Hofstra's policies, they, and other unidentified students, worked more than 25 hours a week during the school year. (Pls.' Mem. at ¶¶ 7-8). Other than the hearsay statements in their affidavits, which are insufficient to meet their burden, they provide *no* evidence for their bold suggestion that Hofstra disregarded its policies as to them or as to any other unnamed individuals on a wide scaled or even limited basis. This is fatal to their application. See Prizmic, 2006 U.S. Dist. LEXIS, at *7-8 (noting that, where plaintiff had not submitted any evidence by affidavit or otherwise to demonstrate that he and other potential plaintiffs were victims of a common illegal policy, certification and notice were not warranted). On the other hand, their allegations that in their individual situations they were not always paid for all hours worked or that they worked more than 25 hours a week in violation of Hofstra's policy further demonstrates the individualized nature of their claims. See Diaz, 2005 WL 2654270, at *5 (finding that, where Plaintiff's claim required examination by the court as to when he was scheduled to work, when he actually worked, and whether he was paid for such time, allegations were too individualized to warrant collective action treatment and notice).

> **2.    Plaintiffs Cannot Demonstrate that the Volunteer and Extracurricular Participants Are "Employees" Subject to the Act; Even if they Could, They Still Could Not Demonstrate that They Are Similarly Situated to One Another.**
>
> > (a)    The Unpaid Intern Assistants are Not "Employees" Subject to the FLSA.

As noted, Plaintiffs lump all the student assistants together and assume that all are subject to the FLSA. Such assumption is not accurate. The U.S. Department of Labor has recognized that students in programs conducted primarily for their benefit as a part of the educational

opportunities provided to the students by a college or university is not "work" of the kind contemplated by the Act, and does not result in an employee-employer relationship between the student and the school.  29 U.S.C. § 203(g) (definition of "employ").

As the United States Supreme Court has recognized, the FLSA's definition of "employee" is circular and all-inclusive and Congress could not have intended to include within its reach all persons who work.  Walling v. Portland Terminal Co., 330 U.S. 148, 152 (1947).  In the spirit of Walling, the Wage and Hour Division of the U.S. Department of Labor ("DOL") has set forth a six-part test to determine whether students, interns, trainees, and the like should be considered employees under the Act.

The six factors (the "Walling Factors") look to whether:  (i) the training is similar to what would be given in a vocational school or academic education instruction; (ii) the training is for the benefit of the trainees or students; (iii) the trainees or students do not displace regular employees, but work under their close observation; (iv) the employer that provides the training derives no immediate advantage from the activities of the trainees or students; (v) the trainees or students are not necessarily entitled to a job at the conclusion of the training period; and (vi) the employer and the trainees or students understand that the trainees or students are not entitled to wages for the time spent in training.   See DOL Opinion Letter Student Externs/FLSA Applicability, FLSA 2006-12 (Apr. 6, 2006).  See also DOL Letter, 21 BA 941 (Sept. 13, 1967) (noting that where training is for primary benefit of students it will not be considered work).

In its Field Operations Handbook ("FOH"), the DOL has amplified on its position why student assistants holding positions like Football Team Managers are not employees and subject to the FLSA:

> As part of their overall education program . . . institutions of higher learning may
> permit or require students to engage in activities in connection with dramatics,

student publications, glee clubs, bands, choirs, debating teams, radio stations, intramural and <u>interscholastic athletics</u> and other similar endeavors. Activities of students in such programs, conducted primarily for the benefit of the participants as a part of the educational opportunities provided to the students by the school or institution, are not "work" of the kind contemplated by Sec. 3(g) of the Act and do not result in an employee-employer relationship between the student and the school or institution. Also, <u>the fact that a student may receive a minimum payment for participation in such activities would not necessarily create an employment relationship</u>. FOH § 10b03(e) (emphasis added).

Notably, DOL's position is in accord with decisions of other agencies that have found in related settings that student assistants are not "employees" under the act at issue. See, e.g., <u>Brown Univ.</u>, 342 N.L.R.B. 483, 489 (2004) (holding graduate student assistants are not "employees" under the National Labor Relations Act where their relationship to the university was primarily educational and they benefited from performing services related to their educational program). And following the DOL's enforcement position, courts, too, have concluded that student assistants are not "employees" subject to the FLSA. See, e.g., <u>Marshall v. Regis Educ. Corp.</u>, 666 F.2d 1324, 1328 (10th Cir. 1981) (holding that Resident Assistants are not employees for purposes of the FLSA where they benefited from the opportunity to grow and develop as peer leaders).

Application of the <u>Walling</u> Factors and the FOH demonstrates that Plaintiffs were not employees under the FLSA. As its title implies, a Football Team Manager engages "in activities in connection with athletics." As described <u>supra</u>, moreover, each of the Plaintiffs derived a number of benefits from their experiences as Football Team Managers including exposure as to how to run an athletic team, the experience of working on the athletic field, traveling through the Northeast, improving interpersonal and organizational skills, and making a valuable addition to their resumes due to the varied nature of the operational duties performed. Plaintiffs did not displace regular employees because if the position did not exist, the duties performed by the

Football Team Manager would otherwise have been performed by an existing employee or the student athletes. (Hayes Aff., ¶ 12). As to the stipend Plaintiffs received, there was no understanding between Plaintiffs and Hofstra that the stipend constituted wages, or that Plaintiffs would otherwise be entitled to payment for services rendered. (Miller-Suber Aff., ¶ 9). To the contrary, the stipend was meant only to reasonably approximate Plaintiffs' incidental expenses, such as a missed meal, incurred while serving as Team Managers. (Miller-Suber Aff., ¶ 9).

        (b)      The Student Volunteers and Extracurricular Participants Are Not Similarly Situated and Determining If Each Was Properly Classified Requires an Individualized Factual Determination.

At this juncture, however, Hofstra need not establish that the student volunteers and extracurricular participants were not "employees." Rather, it is enough to demonstrate – as we have here – that in light of the myriad different student assistant positions performing a myriad of different functions, the determination of each unpaid assistant's status as "employee" or "assistant" turns on an individualized application of the <u>Walling</u> Factors as further explicated by the FOH to each assistant's particular circumstances. Such individualized determinations, of course, make a collective action inappropriate, as in such an instance there is no "basis to conclude that questions common to a potential group of plaintiffs would predominate a determination" of the case's merits. <u>Mike</u>, 274 F. Supp. 2d at 220.

Plaintiffs cannot simply declare that <u>every</u> unpaid Hofstra student volunteer and/or extracurricular participant over the past six (6) years was misclassified as not subject to the Act and then obtain a federal court order sending out notices to thousands of current and former students. Plaintiffs' claim that Hofstra's "common scheme" consisted of denying them overtime and minimum wage is, in reality, a challenge to Hofstra's determination that they were not subject to FLSA coverage. But a generalized claim that an employer misclassified disparate

categories of employees performing disparate duties is insufficient to establish that the class members are similarly situated; rather the plaintiffs must establish "a factual nexus between their situations and the situations of other current and former employees whom plaintiffs seek to join as putative members of the collective action." Diaz, 2005 WL 2654270, at *3.

The Diaz court, for example, rejected plaintiffs' contention that classwide notice was appropriate "based on the allegation that all putative class members were victims of [the employer's] 'company-wide plan of not paying their employees overtime or other wages for work performed.'" Id. (citation omitted). Instead, the court concluded that despite their sweeping allegations, the plaintiffs' claims turned on analysis of their particular duties, making a collective action inappropriate. Id. at *4-5.

A putative classes' attempt to rely on an employer's alleged commons scheme of denying them overtime was specifically considered and rejected in Morisky v. Public Service Electric & Gas Co., 111 F. Supp. 2d 493 (D.N.J. 2000). There, plaintiffs contended that their employer had misclassified all of them as exempt administrative employees as part of a "common scheme" to deny them overtime. Id. at 498. In rejecting plaintiffs' request for conditional certification the court noted that, as here, "plaintiffs do not even discuss the job responsibilities of the opt-in plaintiffs." Id. Further, as is the case here, the determination of whether the employees were, in fact, misclassified "depend[ed] on an individual, fact-specific analysis of each employee's job responsibilities under the relevant statutory exemption criteria." Id. (emphasis added). Certification in this circumstance was denied, because granting it would result in certification of "a class based upon [plaintiff's] own belief as to which employees did not satisfy any of the exemption criteria — the very issue to be litigated in th[e] action," and if "litigated as a collective action would be anything but efficient." Id. at 498-99.

Here, a court would have to apply the <u>Walling</u> Factors to potentially thousands of students on a job-by-job, or more likely student-by-student, basis. The responsibilities of graduate and undergraduate students who receive a stipend vary by department, supervisor, the subject matter with which they interact, their level of education and experience, and their level of achievement. (Miller-Suber Aff., ¶ 12). Even among athletic team managers, there is variation in the duties and responsibilities based on the sport, size of the team and other factors. (Hayes Aff., ¶ 4). Plaintiffs fail to describe or submit any documentation showing what their job duties actually were or how they were similar to the duties of other undergraduate or graduate assistants in stipend (or, for that matter, paid) positions. Although Plaintiff seeks to place all undergraduate and graduate assistants in the same category, their job duties differ substantially and the highly fact-specific and detailed analysis of each of these duties required to perform similarly situated analysis makes class treatment and notice inappropriate here.[3] See <u>Myers v. Hertz Corp.</u>, No. 02-cv-4325, 2007 U.S. Dist. LEXIS 53572, at *1-2 (E.D.N.Y. July 24, 2007) (affirming this Court's earlier decision denying denied certification and notice where liability as to each putative plaintiff depended on whether that plaintiff was correctly classified as exempt and would require a fact-intensive inquiry into each potential plaintiff's employment status). Hence, Plaintiffs' motion for the names and addresses of these individuals, and their request that notice be sent to this diverse group of students, be denied.

_____

[3] Even if the Court were to grant notice, it should be limited to Athletic Team Managers as Plaintiffs have submitted no evidence demonstrating that other student assistants were similarly situated with respect to the alleged misclassification. See <u>Sherril v. Sutherland Global Servs., Inc.</u>, 487 F. Supp. 2d 344, 350 (W.D.N.Y. 2007) (granting notice but limiting it to telemarketing employees at each of the employer's call centers where Plaintiffs had not demonstrated that the alleged illegal policy affected hourly employees other than the telemarketing agents). Defendant requests the right to submit a proposed notice if the Court decides any notice is appropriate.

16

      (c)     The Position of Football Team Manager Is Unique and Not Similarly Situated to the Other Student Volunteer or Extracurricular Participants.

Whatever question there may be regarding how different various student intern duties are or were, there can be no question as to the uniqueness of the duties performed by the plaintiffs here. Summa and the three opt-in Plaintiffs each held the position of Football Team Manager. The primary job responsibility of a Team Manager is to assist the coaches before, during, and after practices. (Hayes Aff. ¶ 8). This assistance consisted of a diverse set of tasks including: (i) helping, organizing and scheduling practices; (ii) arranging the logistics of travel arrangements for the football team, the cheerleaders and team supporters; (iii) attending to the team's video and technical needs; (iv) attending to the team's medical and training room needs; and (v) attending to the team's equipment room needs. (Hayes Aff., ¶ 8). In contrast, graduate assistants, such as Research Assistants or Student Mentors, perform work much more closely linked to the classroom, researching narrow topics in a particular field, validating and analyzing data, and drafting protocols and academic papers.

Furthermore, the duties of the Football Team Manager are unique and cannot be equated with other Team Manager positions. (Hayes Aff., ¶ 16). For example, the Football Team Manager is primarily responsible for assisting at practices. He or she sets up the football field, brings out the equipment, arranges the locker room before practices, and calls out the periods during practice. At away games, the Football Team Manager does things like order pizza for the student athletes to share in their hotel rooms. (Hayes Aff., ¶ 16).

Plaintiffs have failed to demonstrate "a factual nexus between their situations and the situations of other current and former employees whom plaintiffs seek to join as putative members of the collective action," Diaz, 2005 WL 2654270, at *3, or that common issues will predominate. Mike, supra. Courts have not hesitated to find that employee plaintiffs who

performed unique and different duties from others whom they sought to include in their class were not similarly situated to those employees and thus denied conditional certification. <u>Myers</u>, 2007 U.S. Dist. LEXIS 53572, at *3-4; <u>Diaz</u>, 2005 WL 2654270, at *3-5; <u>Mike</u>, 274 F. Supp. 2d at 220.

> ### 3. The "Class" of Undergraduate and Graduate Assistants is Overbroad. Student Employees and Volunteers or Extracurricular Participants Are Not Similarly Situated and Cannot Be Included In a Single Class.

Even if Plaintiffs could establish that the paid employee assistants are similarly situated as to one another (which they cannot), or if they could establish that the unpaid student extracurricular participants or volunteers were similarly situated as to one another (which they also cannot do) there can be no question but that the paid student employees are not similarly situated to the volunteers and/or extracurricular participants. Not only are the duties performed by these two classes of students distinctly different, but the employer policies at issue are also distinctly different.

As noted, Hofstra classifies the paid student employees as "employees" for purposes of the FLSA. Hence, with respect to that class the issue will be whether Hofstra correctly applied the Act's requirements as to each. As discussed above, however, the threshold issue with respect to the unpaid volunteers and extracurricular participants is whether they are subject to the Act at all. Even the "fairly lenient standard" invoked by Plaintiff does not allow for a single class comprised of would-be plaintiffs who performed diverse tasks, were classified differently by their employer and the determination of whose rights require consideration and application of markedly different legal concepts. <u>See, e.g.,</u> <u>Diaz</u>, 2005 WL 2654270, at *3 (denying conditional certification to class of employees classified as both exempt and nonexempt because their claims were distinct and required consideration of different facts and legal analysis).

II.    **THERE IS NO BASIS FOR TOLLING THE STATUTE OF LIMITATIONS IN THIS CASE AND EXPANDING THE PUTATIVE CLASS TO A SIX-YEAR PERIOD.**

Plaintiffs suggest that the Court should toll the two (2) year statute of limitations generally applicable to FLSA claims and instead substitute a six (6) year period for notice to potential class members. (Pls.' Mem, at 3 nn.1, 10.)  The basis for this suggestion is Hofstra's alleged failure to post the required notices advising employees of their minimum wage and overtime pay rights under federal and state law.  See 20 C.F.R. § 516.4.  In support of this suggestion, they rely on Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 369 (S.D.N.Y. 2007).  Plaintiffs' reliance on Iglesias-Mendoza is misplaced.

In Iglesias-Mendoza, the court accepted plaintiffs' proposed six-year class period for purposes of preliminary certification where plaintiffs alleged that defendants failed to post notices advising plaintiffs of their rights under the FLSA as required by 29 C.F.R. § 516.4.  The court, however, made clear that it was doing so in light of the fact that, by virtue of plaintiffs' state law claims, notice would be sent to employees who worked for the defendants over the six year period whether or not the FLSA action was subject to a shorter statute of limitations and thus defendants were unlikely to suffer harm.  Id.

That rationale does not apply in the instant case.  To the contrary, Plaintiffs' state law claims in this case have been dismissed.  See Ex. A.  Therefore, permitting a longer limitations period will not be harmless as the court held in Iglesias-Mendoza.

More importantly, as demonstrated by the attached affidavits, Hofstra posted and continues to post all required FLSA notice during the relevant period.  (Miller-Suber Aff., ¶¶ 13, 14, 15.)  These notices are located in the Human Resources department, the Student Center and in the Payroll Office.  (Miller-Suber Aff,. ¶¶ 13, 14, 15.)  All students who hold hourly positions or are given a stipend must visit the Human Resources department to fill out the required

19

paperwork.  (Miller-Suber Aff., ¶ 13.)  No student can begin working until this paperwork has been completed.  (Miller-Suber Aff., ¶ 24.)  The additional notice posted in the Student Center is also likely to be viewed by most, if not all, students as it is a popular gathering place and contains a bulletin board with information regarding available student positions.  (Miller-Suber Aff., ¶ 14.)  Finally, those students who pick up their paychecks through the Payroll Office must also view the required notice.  (Miller-Suber Aff., ¶ 15.)

Plaintiffs' argument that even if such notice was posted, it was not "conspicuous," is equally unavailing.  Each Plaintiff had to pass through the Human Resources Office at least once and likely visited both the Human Resources department and the Student Center on multiple occasions.  Summa, for instance, held more than one student position during her time at Hofstra and was required to visit Human Resources each time she took on one of these jobs.  (Miller-Suber Aff., ¶¶ 8, 11, 13.)  Plaintiffs cite no law to support their assertion that Hofstra's multiple postings are inadequate.  In light of the above, and in consideration of the high legal standard for equitable tolling to apply, Plaintiffs' request should be denied.

**III.     PLAINTIFFS' AFFIDAVITS ARE BOILER-PLATE, REPLETE WITH HEARSAY, AND SHOULD BE DISREGARDED IN RULING ON PLAINTIFFS' MOTION.**

As discussed *supra*, a court may facilitate notice only if plaintiffs can make a showing "sufficient to demonstrate that [they] and potential plaintiffs together were victims of a common policy or plan that violated the law."  Scholtisek, 229 F.R.D. 381 at 387 (quoting Hoffman v. Sbarro, Inc., 982 F. Supp. at 261).  Plaintiffs must demonstrate this common policy or scheme on the basis of both the pleadings and affidavits.  Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 321 (S.D.N.Y. 2007); see also Prizmic, 2006 U.S. Dist. LEXIS 42627, at *6 (noting that although plaintiff's burden at this initial stage is not onerous, conditional certification based

solely on allegations in the complaint is an inefficient and overbroad application of the opt-in system).  The affidavits submitted by Plaintiffs cannot support any such showing.

A court may strike "portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements." See e.g., Hollander v. Am. Cyanamid Co., 172 F.3d 192, 198 (2d Cir. 1999) (affirming district court's grant of a motion to strike where affidavit was "riddled with inadmissible hearsay, conclusory statements and arguments, and information clearly not made on the affiant's personal knowledge . . ."); Star Ins. Co. v. Hazardous Elimination Corp., No. 05-cv-4762, 2007 U.S. Dist. LEXIS 6574, at *39-40 (E.D.N.Y. Jan. 30, 2007) (J. Hurley) (noting that "where an affidavit is not based on personal knowledge, it need not be considered" and that "where an affidavit contains hearsay that would not be admissible as a hearsay exception, such hearsay can be struck.").  The four affidavits submitted by Plaintiffs contain identical boilerplate language, are replete with hearsay, and provide little or no foundation for many of their statements.

The statements regarding "all other students," as embodied in paragraphs 4, 6, 7, 8, and 10 are based entirely on hearsay and should be disregarded.  (Pls.' Affs., ¶¶ 4, 6, 7, 8, 10.)  For example, all four Plaintiffs declare that, "Based on my conversations with other students, I learned it was a common practice to underpay Undergraduate and Graduate Assistants, either by paying an hourly wage lower than the federal minimum wage or by offering meager stipends." (Pls.' Affs., ¶ 4).  This submission provides the Court with no factual basis for Plaintiffs' "learn[ing] that it was "common practice to underpay Undergraduate and Graduate Assistants." (Pls.' Affs., ¶ 4).  See Flores v. Osaka Health Spa, Inc., No. 05-cv-962, 2006 U.S. Dist. LEXIS 11378, at *7-8 (S.D.N.Y. Mar. 16, 2006) (finding that plaintiff failed to make her "modest" showing that plaintiffs together were victims of a common policy or plan where her statements

were conclusory and offered nothing of evidentiary value).   Rather, the statement relies on hearsay.  See Seever v. Carrols Corp., No. 02-cv-6580L, 2007 U.S. Dist. LEXIS 92379, at *35 (W.D.N.Y. Dec. 17, 2007) (noting that, where affidavits are incomprehensibly vague as to material circumstances surrounding the alleged policy, the affidavits did little to advance plaintiffs' burden to show that they were all victims of a common policy that violated the FLSA).

Likewise, all four affiants state that, "During the Class Period, Hofstra similarly failed to pay students overtime wages even when students worked only one job.  Since Hofstra insisted that all student Undergraduate and Graduate Assistants were part-time employees entitled to only 25 hours of work and no overtime, they regularly looked the other way as students worked well beyond 25 hours."  (Pls.' Affs., ¶ 7.)  This sort of conclusory and boiler-plate allegation is not the level of proof required to show that Plaintiffs' are indeed similarly situated.  See Firgeleski, Jr. v. Hubbel, Inc., No. 99-9134, 2000 U.S. App. LEXIS 11023, at *2 (2d Cir. 2000) (affirming district court's decision to strike portions of an affidavit that contained statements amounting to speculation that were not based on affiant's personal knowledge); Tips Exports, Inc. v. Music Mahal, Inc., No. 01-cv-5412, 2007 U.S. Dist. LEXIS 84399, at *14 (E.D.N.Y. Mar. 9, 2007) (finding plaintiff's proof weak where consisted solely of "boiler-plate written declarations"); Barfield v. NYC Health & Hosps. Corp., No. 05-cv- 6319, 2005 U.S. Dist. LEXIS 28884, at *3 (S.D.N.Y. Nov. 17, 2005) (denying plaintiff's motion for certification and notice where plaintiff offered "nothing but limited anecdotal hearsay" to suggest fellow nurses were similarly situated to a widespread policy of failure to pay them overtime).

Accordingly, the Court should disregard all of the statements in the affidavits regarding other individuals since these statements are not based on personal knowledge and/or are hearsay. See id., (denying plaintiff's motion for certification and notice where plaintiff offered "nothing

but limited anecdotal hearsay" to suggest fellow nurses were similarly situated to a widespread policy of failure to pay them overtime); see also Silverman v. SmithKline Beechham Corp., No. 06-cv-7272, 2007 U.S. Dist. LEXIS 80030, at *6-7 (C.D. Cal. Oct. 15, 2007) (denying certification and notice where Plaintiff submitted "nearly identical" declarations that were not representative of the company's various discrete business divisions, and which all contained numerous hearsay and other evidentiary problems).

That leaves only the statements in Plaintiffs' affidavits regarding their individual circumstances.  These statements underscore the individualized nature of their claims and support denial of Plaintiffs' motion.  For example, in identical paragraphs, each Plaintiff asserts that she individually worked in excess of 40 hours per week, through work for a single job and work between two jobs, yet received neither minimum wage nor overtime.  (Pls.' Affs., ¶ 5.) These assertions emphasize the kind of highly fact-specific and detailed inquiry applicable to Plaintiffs' claims and that would make class treatment and notice inappropriate here.  See Myers, 2007 U.S. Dist. LEXIS 53572, at *1-2 (affirming District Judge Hurley's prior decision, which denied certification and notice where liability as to each putative plaintiff depended on whether that plaintiff was correctly classified as exempt and would require a fact-intensive inquiry into each potential plaintiff's employment status); see also Diaz, 2005 WL 2654270, at *4 (noting that a determination of exempt or nonexempt status requires a detailed factual analysis of daily activities and responsibilities).  Thus, Plaintiffs' affidavits, when taken as a whole, are insufficient to support a motion for court facilitation of notice.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Plaintiffs' motion to direct Defendant to provide names and addresses of putative class members and deny Plaintiffs' request for facilitation of notice to the putative class.

Elise M. Bloom
Brian J. Gershengorn
PROSKAUER ROSE LLP
1585 Broadway
New York, NY  10036-8299
Phone: (212) 969-3000
Fax: (212) 969-2900

Email: ebloom@proskauer.com
*Attorneys for Defendant*

Dated: New York, New York
       February 19, 2008

24