PROSKAUER ROSE LLP
Elise M. Bloom
Brian J. Gershengorn
1585 Broadway
New York, NY  10036-8299
Telephone 212.969.3000
Fax 212.969.2900
ebloom@proskauer.com
*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
LAUREN E. SUMMA, on behalf of herself          :
individually and on behalf of all similarly situated  :    Case No.:  07-CV-3307 (DRH) (ARL)
employees                                                        :
                                                                       :
                                                                       :
                                    Plaintiff,            :
                                                                       :    **ECF Case**
          against                                            :
                                                                       :
HOFSTRA UNIVERSITY                            :
                                                                       :
                                    Defendant.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## DEFENDANT HOFSTRA UNIVERSITY'S OBJECTIONS TO MAGISTRATE JUDGE LINDSAY'S AUGUST 14, 2008 ORDER

**TABLE OF CONTENTS**

Page

Table of Authorities ...................................................................................................................iii

PRELIMINARY STATEMENT ..................................................................................................1

RELEVANT FACTUAL BACKGROUND....................................................................................4

     A.     HOFSTRA ....................................................................................................4

          1.     Extracurricular and Volunteer Opportunities...................................4

          2.     Hourly Positions...............................................................................5

     B.     PLAINTIFF SUMMA AND THE THREE OPT-INS.............................................5

     C.     THE MAGISTRATE JUDGE'S AUGUST 14, 2008 ORDER. .................................................................................................................6

     D.     DEFENDANT'S REQUEST FOR RECONSIDERATION, RENEWAL, AND/OR REARGUMENT.................................................................7

ARGUMENT ..............................................................................................................................8

I.     THE MAGISTRATE JUDGE'S DECISION TO GRANT CONDITIONAL CERTIFICATION OF THE PROPOSED CLASS OF GRADUATE AND UNDERGRADUATE ASSISTANTS WHO DID NOT RECEIVE THE PREVAILING MINIMUM WAGE AND/OR OVERTIME COMPENSATION IS CLEARLY ERRONEOUS AND CONTRARY TO LAW ................................................8

     A.     The Class of Undergraduate and Graduate Assistants As To Which The Magistrate Judge Granted Conditional Certification And Authorized Notice Is Not "Similarly Situated" As To A Uniform Illegal Policy. ..........................................................................................9

     B.     There Is No Competent Evidence Supporting Conditional Class Certification.................................................................................11

i

C.  The Magistrate Judge Erred in Conditionally Certifying A Class Comprised Of Student Assistants In A Wide Variety Of Diverse Positions Who Receive Stipends Or Other Forms Of Compensation For Participating In Extracurricular Activities Or Internships Because Adjudication Of Their Claims Would Require An Individualized Fact-Intensive Inquiry That Is Not Appropriate For Collective Treatment........................................................................13

D.  The Magistrate Judge's Refusal To Consider Issues Related To The "Merits" Of This Action Is Contrary To Law. ...............................................20

E.  To The Extent That Conditional Class Certification Would Be Appropriate With Respect To Any Group Of Student Assistants, Plaintiffs' Showing Permits Nothing More Than Conditional Certification Of A Class Limited To Football Team Managers........................................................................22

II.  THE COURT SHOULD ORDER THAT PLAINTIFFS' PROPOSED NOTICE CONFORM TO THE CONDITIONALLY CERTIFIED CLASS ........................................................................24

CONCLUSION ........................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Alliance to End Repression v. Rochford,
  75 F.R.D. 441 (N.D. Ill. 1977).............................................................................25

Amendola v. Bristol-Myers Squibb Co.,
  558 F. Supp. 2d 459 (S.D.N.Y 2008)...................................................................21

Anglada v. Linens N' Things, Inc.
  No. 06-Civ.-12901 (CM)(LMS), 2007 WL 1552511 (S.D.N.Y. May 29, 2007) .....................9

Brown Univ.,
  342 N.L.R.B. 483 (2004) ......................................................................................16

Bunyan v. Spectrum Brands, Inc.,
  No. 07-CV-0089-MJR, 2008 U.S. Dist. LEXIS 59278 (S.D. Ill. July 31, 2008) .............21, 22

Clausman v. Nortel Networks, Inc.,
  No. IP 02-0400-C-M/S, 2005 U.S. Dist. LEXIS 11501 (S.D. Ind. May 1 2003)...................18

Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.,
  508 U.S. 602 (1993)................................................................................................8

Davis v. Charoen Pokphand (USA), Inc.,
  303 F. Supp. 2d 1272 (M.D. Ala. 2004) .................................................................13

Diaz v. Elecs. Boutique of Am., Inc.,
  No. 04-CV-0840E (SR), 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ...............9, 12, 18, 22

Evancho v. Sanofi-Aventis U.S. Inc.,
  No. 07-2266, 2007 U.S. Dist. LEXIS 93215 (D.N.J. Dec. 18, 2007).......................................9

Harris v. FFE Transp. Servs., Inc.,
  No. 3:05-CV-0077-P, 2006 U.S. Dist. LEXIS 51437 (N.D. Tex. May 15, 2006)...................19

Hoffmann v. Sbarro, Inc.,
  982 F. Supp. 249 (S.D.N.Y. 1997) .....................................................................9, 10

Holt v. Rite Aid Corp.,
  333 F. Supp. 2d 1265 (M.D. Ala. 2004) .................................................................19

In re Initial Pub. Offering Sec. Litig. ("In re IPO"),
  471 F.3d 24 (2d Cir. 2006)....................................................................................20

Jacobsen v. Stop & Shop Supermarket Co.,
     No. 02-Civ.-5915 (DLC), 2003 U.S. Dist. LEXIS 7988 (S.D.N.Y May 14, 2003)................10

Marshall v. Regis Educ. Corp.,
     666 F.2d 1324 (10th Cir. 1981) ...................................................................................16

Medoy v. Warnaco Employees Long Term Disability Ins. Plan,
     No. 97 CV 6612 (SJ), 2006 U.S. Dist. LEXIS 7635 (E.D.N.Y. Feb. 14, 2006).......................8

Mike v. Safeco Ins. Co. of Am.,
     274 F. Supp. 2d 216 (D. Conn. 2003) ....................................................................10, 18, 20

Morales v. Plantworks, Inc.,
     No. 05 Civ 2439 (DC), 2006 U.S. Dist. LEXIS 4267 (S.D.N.Y. Feb. 1, 2006) ....................12

Morisky v. Pub. Serv. Elec. & Gas Co.,
     111 F. Supp. 2d 493 (D.N.J. 2000) ...................................................................................17, 18

Myers v. Hertz Corp.,
     No. 02-CV-4325 (BMC)(MLO), 2007 U.S. Dist. LEXIS 53572
     (E.D.N.Y. July 24, 2007) .................................................................................................18

Pfohl v. Farmers Ins. Group,
     No. CV 03-3080 DT (RCX), 2004 U.S. Dist. LEXIS 6447 (C.D. Cal. Mar. 1, 2004)...........19

Prizmic v. Armour, Inc.,
     No. 05-CV-2503 (DLI)(MDG), 2006 U.S. Dist. LEXIS 42627
     (E.D.N.Y. June 12, 2006) ...........................................................................................9, 12, 22

Reich v. Homier Distrib. Co.,
     362 F. Supp. 2d 1009 (N.D. Ind. 2005) ...........................................................................18

Scholtisek v. Eldre Corp.,
     229 F.R.D. 381 (W.D.N.Y. 2005)..................................................................................9, 10, 12

Sherrill v. Sutherland Global Servs.,
     487 F. Supp. 2d 344 (W.D.N.Y. 2007)...............................................................................24

Tompkins v. R.J. Reynolds Tobacco Co.,
     92 F. Supp. 2d 70 (N.D.N.Y.2000)......................................................................................9

United States v. United States Gypsum Co,
     333 U.S. 364 (1948).............................................................................................................9

Walling v. Portland Terminal Co.,
     330 U.S. 148 (1947)......................................................................................................14, 19

## STATUTES AND OTHER AUTHORITIES

29 U.S.C. § 203(g) ................................................................................................................14

29 U.S.C. § 216(b) ..........................................................................................................1, 6, 9

FED. R. CIV. P 59(e) .................................................................................................................8

FED. R. CIV. P. 72(a) ...............................................................................................................8

U.S.D.C. E.D.N.Y./S.D.N.Y. 6.3 ............................................................................................8

## PRELIMINARY STATEMENT

Defendant Hofstra University ("Hofstra") submits this memorandum of law in support of its objections to Magistrate Judge Lindsay's August 14, 2008 Order (the "Order")[1] conditionally certifying a class under Section 216(b) of the Fair Labor Standards Act ("FLSA") consisting of "all Hofstra Undergraduate and Graduate assistants within the past three years who did not receive the prevailing minimum wage and/or overtime compensation" (Order at 10) and directing Hofstra to provide the names and addresses of, and to send notices to, all undergraduate and graduate assistants since August 2005.

Plaintiff Lauren Summa ("Summa") and opt-in plaintiffs Emily DeGaglia, Lynn Ann Sumner, and Dawn Sumner (the "opt-in plaintiffs" and, collectively with Summa, "plaintiffs"), are former undergraduate and graduate students who served as Football Team Managers at various points from 2002 to 2006. They allege that Hofstra improperly denied them overtime and/or minimum wage compensation under the FLSA.

The Magistrate Judge's Order should be reversed for the following reasons:

First, plaintiffs have not demonstrated that they and other potential plaintiffs were similarly situated with respect to a common policy or plan that violates the FLSA – i.e., the standard that must be satisfied to obtain conditional class certification. In fact, plaintiffs have not – and cannot – identify any illegal policy or plan to which they and the putative class members together were allegedly subjected, instead arguing that the putative class is similarly situated with respect to Hofstra's alleged failure to adhere to its lawful policies. This, as a matter of law, does not satisfy plaintiffs' burden for obtaining class certification, and the Magistrate Judge's failure to so hold was contrary to law.

_____

[1] Attached as Exhibit A is a copy of Magistrate Judge Lindsay's Order.

Second, plaintiffs did not submit any competent evidence to demonstrate that there is a group of individuals who are similarly situated.  They rely solely on Summa's own affidavit (the credibility of which has become an issue, as discussed herein) regarding her alleged experience as a Football Team Manager, and the affidavits of the time-barred opt-in plaintiffs which pertain to periods of time that precede the class period here.

Third, conditional class certification is especially inappropriate in this case because of the highly individualized, fact-intensive inquiry that is required to adjudicate plaintiffs' claims.  The putative class consists of all undergraduate and graduate assistants who served as athletic team managers, resident assistants, student mentors, orientation counselors, musicians in the band or orchestra, singers/performers for various University events, and a host of other utterly dissimilar roles.  Any putative class member's entitlement to relief in this action depends on whether he or she is subject to the Act, and whether a student assistant performing that function is an "employee" under the FLSA is determined, under established judicial and administrative authority, by an ad hoc analysis of that individual's particular duties and responsibilities in his or her position.  In this case, this inquiry would have to be conducted with respect to potentially thousands of individuals – simply to determine whether they are even covered by the FLSA, and if so, whether any additional exemptions apply to them.

Indeed, there is precedent regarding students in analogous positions holding that they are not, in fact, statutory employees.  Moreover, there simply is no evidence suggesting any similarity between these plaintiffs and putative class members who served in such dissimilar positions as student mentors, resident assistants, orientation counselors, and band musicians to name just a few, and in fact the competent evidence demonstrates the stark dissimilarities between and among these positions.  If this litigation is permitted to proceed as a collective

2

action with the class as defined in the Magistrate Judge's Order, this Court will be enmeshed in a procedural and evidentiary quagmire that will make the determination of plaintiffs' as well as Hofstra's rights more, rather than less, difficult and expensive.

Fourth, the Magistrate Judge's blanket refusal to consider any question that, in her view, touches on the "merits," is contrary to law.  Given the standard that is applied for determining whether students who participate in extracurricular activities or internships are "employees" under the FLSA, and the individualized inquiry that is required to make that determination, it is necessary and entirely permissible to consider these questions – even though they relate to the "merits" of plaintiffs' claims – in deciding whether collective treatment is appropriate.

Finally, in the event that the Court does not disturb the Magistrate Judge's determination regarding the scope of the class, the form of notice authorized by the Order must be modified. The proposed notice submitted by plaintiffs is directed to <u>all</u> undergraduate and graduate assistants during the specified time period, whereas the Magistrate Judge conditionally certified a class of student assistants "who did not receive the prevailing minimum wage and/or overtime compensation." (Order at 10)  The Magistrate Judge failed to direct modification of the notice to conform to the class she conditionally certified, and we respectfully request that this Court correct that omission which would result in unnecessary notice being sent to thousands of student assistants causing increased costs and confusion.

3

## RELEVANT FACTUAL BACKGROUND

### A.   HOFSTRA

Hofstra is a nationally-recognized not-for-profit educational institution.  (9/25/07 Declaration of Julie Block ("Block Decl."), ¶ 7).  Hofstra currently enrolls approximately 8,000 undergraduate and 4,000 graduate students.  (2/15/08 Affidavit of Evelyn Miller-Suber ("Miller-Suber Aff."), ¶ 3).

### 1.   Extracurricular and Volunteer Opportunities

Hofstra provides a broad range of ancillary and extracurricular programs that complement its primary academic functions.  (Miller-Suber Aff., ¶ 9).  These programs provide students with the opportunity to gain additional experiences to enhance their professional development outside the classroom and are intended to provide benefits to students.  (Miller-Suber Aff., ¶ 9).  The extracurricular and volunteer opportunities include positions such as athletic team managers, resident assistants, student mentors, orientation counselors, musicians in the band or orchestra and singers/performers for various University events.  (Miller-Suber Aff., ¶ 10).

In these extracurricular and volunteer positions, undergraduate and graduate assistants perform a multitude of different tasks depending upon:  (i) their department; (ii) the supervisor with whom they work; (iii) the subject matter with which they interact; (iv) their level of education and experience; and (v) their level of achievement.  (Miller-Suber Aff., ¶ 12).  The responsibilities vary greatly by position.  (Miller-Suber Aff., ¶ 12).  While some of them receive a stipend in connection with their work, this stipend is not a payment for services rendered. Rather, it is intended to cover additional incidental expenses that may be incurred by students in the course of holding one of these positions since the duties associated with these opportunities

do not always occur at fixed times and are driven by the particular event  (Miller-Suber Aff.,

¶ 9).

### 2.    <u>Hourly Positions</u>

Hofstra also employs thousands of students in positions that are paid in compliance with

federal wage-hour laws.  These include, but are not limited to, such jobs as office assistants, who

do office tasks such as make photocopies, run errands, and answer phones, computer assistants,

web master assistants, events managers, resident safety representatives, events security, student

safety patrol, lifeguards, ushers, survey takers, and tutors.  All student employees are

compensated at hourly rates pursuant to applicable law (Miller-Suber Aff., ¶ 6) and as such are

not included in the class that the Magistrate Judge conditionally certified in the Order.

As to the hourly paid positions, the general rule is that students should only work one job

at a time.  During the school year, students generally are not supposed to work more than 25

hours a week.  During the summer session and January intersession, students are permitted to

work longer hours.  (<u>See</u> Miller-Suber Aff., Ex. A, Student Hours Posting).

### B.    <u>PLAINTIFF SUMMA AND THE THREE OPT-INS</u>

Plaintiff Lauren Summa is the named plaintiff.  Her claims arise out of her position as the

Football Team Manager in 2006 (Compl., ¶ 16).  Summa was enrolled at Hofstra as an

undergraduate from the Fall 2003 semester through the Spring 2006 semester.  In the Fall 2006

semester, Summa enrolled as a graduate student in Hofstra's School of Communications.[2]

(Block Decl., ¶ 6).  As Football Team Manager, Summa received a $700 stipend (Compl., ¶ 16),

---

[2]    Summa incorrectly classified herself as an "undergraduate Assistant Football Team Manager" in the
Complaint.  (Compl., ¶ 12).  In fact, Summa was enrolled as a graduate student at Hofstra during the Fall
2006 semester when she was a Football Team Manager.  <u>See</u> Block Decl., Ex. B, Plaintiff's academic
transcript.

and her primary duties consisted of assisting the football coaches before, during, and after practices.  (Compl., ¶ 17).

Three former Hofstra students Emily DeGaglia, Lynn Ann Sumner, and Dawn Sumner have filed consents.  Like Summa, all three allege that they, too, were Football Team Managers while students at Hofstra for which they received stipends.  (Block Decl., ¶ 4; Compl., ¶¶ 12, 16).  All four also held hourly paid positions for which they were compensated pursuant to applicable law.  (Miller-Suber Aff., ¶ 8).  Each of the three opt-in plaintiffs ceased to serve as an undergraduate or graduate assistant prior to August 2005 and therefore, as discussed below, they are time-barred from proceeding in this action.

## C.   THE MAGISTRATE JUDGE'S AUGUST 14, 2008 ORDER

After some discovery, plaintiffs brought a motion before Magistrate Judge Lindsay seeking:  (1) to conditionally certify a collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b); (2) for court-authorized notice of the action to potential opt-in plaintiffs; and (3) for an order directing Hofstra to provide the names, addresses, e-mail addresses, Social Security numbers, and dates of employment for all undergraduate and graduate assistants during the last six years.  In support of their motion, Summa and the three opt-in plaintiffs submitted virtually identical boilerplate affidavits that contained allegations relating solely to their own experience as Football Team Managers, as well as assertions regarding what they had been told by other unidentified students told about those students' experiences as undergraduate or graduate assistants.  Summa later submitted a second affidavit in connection with plaintiffs' reply memorandum in which she purported to list the names of other students who had told her that they were not appropriately compensated in their positions as undergraduate or graduate assistants.  Other than the assertions in Summa's affidavit and the

6

affidavits from the three opt-in plaintiffs whose claims are time-barred, plaintiffs did not submit any competent evidence in support of their motion.

In the Order, Magistrate Judge Lindsay granted in part and denied in part plaintiffs' motion.  The Magistrate Judge conditionally certified a class of all undergraduate and graduate assistants who were not paid the federal minimum wage and/or who did not receive overtime compensation.  The Magistrate Judge denied plaintiffs' request for a six-year period for notice to putative class members, limiting the notice period to three years – i.e., since August 2005.  The Magistrate Judge also granted plaintiffs' request for names and addresses of potential class members but denied plaintiffs' request for additional information, such as e-mail addresses, social security numbers, and dates of employment.

In addition, although the Magistrate Judge ordered the modification of plaintiffs' proposed notice to reflect the three-year notice period, she failed to order that the notice also be modified to conform to the conditional class certification granted by the Order.  That is, while the proposed notice was directed to <u>all</u> undergraduate and graduate assistants during the specified time period, the Order did not require the proposed notice to be limited to those student assistants who were not paid the federal minimum wage and/or who did not receive overtime compensation.

**D.   DEFENDANT'S REQUEST FOR RECONSIDERATION AND/OR REARGUMENT**

Concurrent with these objections, Hofstra has requested leave from Magistrate Judge Lindsay to move for reconsideration and/or reargument with respect to the August 14 Order.  In addition to arguing certain points of law and fact raised in this memorandum of law, Hofstra's motion for reconsideration presents newly discovered evidence concerning plaintiff Summa.  Specifically, during the course of the parties' ongoing discovery, Hofstra located and produced

time records for named plaintiff and class representative Summa.  Those records demonstrate

that on many occasions Summa submitted timesheets which indicate, both on their own and

coupled with Summa's representations in this proceeding, that she worked two or more jobs at

the same time, and as a result received compensation for hours that she could not have possibly

worked.  In light of the questions that this evidence raises about Summa's integrity, her ability to

proceed as class representative is seriously compromised.  In addition, this evidence could

potentially shift the focus of the litigation as it make available unique defenses related solely to

Summa which would severely weaken – if not eliminate entirely – any purported commonality

between Summa and the putative class members.[3]

## ARGUMENT

**I.     THE MAGISTRATE JUDGE'S DECISION TO GRANT CONDITIONAL CERTIFICATION OF THE PROPOSED CLASS OF GRADUATE AND UNDERGRADUATE ASSISTANTS WHO DID NOT RECEIVE THE PREVAILING MINIMUM WAGE AND/OR OVERTIME COMPENSATION IS CLEARLY ERRONEOUS AND CONTRARY TO LAW.**

The Magistrate Judge's Order should be reversed because it was based on an incorrect

application of the relevant legal principles and an erroneous interpretation of the facts.  Non-

dispositive motions decided by a magistrate judge are to be modified or set aside by the district

judge assigned to the case where the magistrate judge's order is found to be "clearly erroneous or

contrary to law."  FED. R. CIV. P. 72(a).  Under Rule 72(a), "[a] finding is 'clearly erroneous'

when although there is evidence to support it, the reviewing [court] on the entire evidence is left

with the definite and firm conviction that a mistake has been committed."  Concrete Pipe &

Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal., 508 U.S. 602, 622, (1993)

---

[3] See generally Medoy v. Warnaco Employees Long Term Disability Ins. Plan, No. 97 CV 6612 (SJ), 2006 U.S. Dist. LEXIS 7635 (E.D.N.Y. Feb. 14, 2006) (under Local Rule 6.3 and FRCP 59(e), a motion for reconsideration should be granted where: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent obvious injustice).

(citing United States v. United States Gypsum Co., 333 U.S. 364, 395, (1948)). An order is

contrary to law "when it fails to apply or misapplies relevant statutes, case law or rules of

procedure." Tompkins v. R.J. Reynolds Tobacco Co., 92 F. Supp. 2d 70, 74 (N.D.N.Y.2000)

(citation and internal quotations omitted).

### A.   The Class Of Undergraduate And Graduate Assistants As To Which The Magistrate Judge Granted Conditional Certification And Authorized Notice Is Not "Similarly Situated" As To A Uniform Illegal Policy.

A court may facilitate notice only if plaintiffs demonstrate that they are sufficiently

"similarly-situated" to the opt-in plaintiffs. See Prizmic v. Armour, Inc., No. 05-CV-2503

(DLI)(MDG), 2006 U.S. Dist. LEXIS 42627, at *4 (E.D.N.Y. June 12, 2006); Anglada v. Linens

N' Things, Inc. No. 06-Civ.-12901 (CM)(LMS), 2007 WL 1552511, at *4 (S.D.N.Y. May 29,

2007). Plaintiffs bear the burden of making this showing. See, e.g., Diaz v. Elecs. Boutique of

Am., Inc., No. 04-CV-0840E (SR), 2005 WL 2654270, at *3 (W.D.N.Y. Oct. 17, 2005);

Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997).

The decision to authorize notice to thousands of individuals is by no means automatic,

and the Court has broad discretion to determine whether notice is appropriate. Prizmic, 2006

U.S. Dist. LEXIS 42627, at *4; see also Evancho v. Sanofi-Aventis U.S. Inc., No. 07-2266, 2007

U.S. Dist. LEXIS 93215, at *7 (D.N.J. Dec. 18, 2007). Under 29 U.S.C. § 216(b), Plaintiffs

must present "substantial allegations" to demonstrate that "'[they] and potential plaintiffs

together were victims of a common policy or plan that violated the law.'" Scholtisek v. Eldre

Corp., 229 F.R.D. 381, 387 (W.D.N.Y. 2005) (quoting Hoffmann, 982 F. Supp. at 261)

(emphasis added). This showing requires "actual evidence of a factual nexus between

[Plaintiffs'] situation and those that [they claim] are similarly situated rather than mere

conclusory allegations." Prizmic, 2006 U.S. Dist. LEXIS 42627, at *7 (emphasis added); accord,

Diaz, 2005 WL 2654270 at *3.

9

Thus, to be entitled to conditional class certification, plaintiffs must demonstrate, through competent evidence, that they and the proposed class members were similarly situated to one another vis-à-vis the application of a uniform, <u>illegal</u> policy or practice.  <u>See Mike v. Safeco Ins. Co. of Am.</u>, 274 F. Supp. 2d 216, 220 (D. Conn. 2003) (denying motion to proceed as a collective action and noting that plaintiffs must demonstrate that they "were victims of a common policy or plan <u>that violated the law</u>.") (<u>quoting Hoffmann</u>, 982 F. Supp. at 261) (emphasis added); <u>accord, Scholtisek</u>, 229 F.R.D. at 387 (same); <u>Jacobsen v. Stop & Shop Supermarket Co.</u>, No. 02-Civ.-5915 (DLC), 2003 U.S. Dist. LEXIS 7988, at *3 (S.D.N.Y. May 14, 2003) (same).

The Magistrate Judge's determination was clearly erroneous because there is no allegation – and the Magistrate Judge did not find – that Hofstra has any policy that violates the Act in any way.  Rather, according to plaintiffs and the Order, plaintiffs and putative class members are similarly situated because the same policies contained in Hofstra's Student Employment Handbook – which are undisputedly lawful – applied to all of them.  (Order at 5, 6).  However, the fact that Hofstra's undergraduate or graduate assistants were subject to the same <u>lawful</u> policies (<u>i.e.</u>, regarding rates of pay and overtime pay) is wholly immaterial to the "similarly situated" analysis under the FLSA because, as the cases cited above – and the Order itself (at 4) – make clear, a proposed class is similarly situated only where members were subject to a common policy or practice that is <u>illegal</u> under the Act.  Merely being subject to the same lawful employment policies does not render plaintiffs similarly situated with respect to an illegal common policy or practice.

10

Moreover, Hofstra's alleged disregard of its own lawful policies is not a basis for finding that plaintiffs and putative class members are similarly situated.[4]   The allegation, on which the Magistrate Judge relied, that Hofstra failed to pay minimum wage and/or overtime compensation to undergraduate and graduate extracurricular participants and interns, is effectively a claim that all putative class members, regardless of position or duties and responsibilities, were misclassified by Hofstra as not being subject to the FLSA.   That determination, however, requires an individualized inquiry regarding each putative plaintiff's particular duties and responsibilities, which, as discussed in detail infra at Point I.C, precludes a finding that putative plaintiffs are similarly situated and renders their claims wholly inappropriate for collective treatment.

**B.     There Is No Competent Evidence Supporting Conditional Class Certification.**

The Magistrate Judge's decision is also clearly erroneous and contrary to law because plaintiff failed to provide competent evidence to demonstrate that she and others were victims of a common policy that violates the Act during the relevant time period.   The evidence submitted before the Court in support of plaintiffs' motion consists entirely of the affidavits of Summa and the three opt-in plaintiffs.   The Order limited the class to Undergraduate or Graduate Assistants who did not receive the prevailing minimum wage and/or overtime compensation from August

---

[4]     Indeed, the Magistrate Judge's view that an employer's disregard of its lawful policies constitutes a common illegal policy or practice for purposes of the similarly situated analysis leads to an incongruous result.   Since most employers have facially lawful employment policies regarding wage and hour issues, virtually every FLSA claim effectively alleges that the employer disregarded its own policies.   If that circumstance alone were sufficient to render putative class members similarly situated, then virtually every case where conditional class certification was denied would have been wrongly decided because, in all such cases, the employer allegedly disregarded its employment policies with respect to the plaintiffs.   Stated differently, under plaintiffs' rationale which the Magistrate Judge embraced, in every FLSA case, whether the claim is based on an alleged misclassification of employees or off-the-clock work or a failure to pay overtime, class certification would be automatic simply on the basis of the employer's alleged failure to adhere to its FLSA-compliant policies.   Although this is plainly incorrect, it is the logical conclusion of the Magistrate Judge's reasoning.

2005 to the present.  However, information elicited through discovery establishes that none of

the three opt-in plaintiffs held student assistant positions during that period of time.  (See also

Defendant's Letter to Judge Hurley requesting permission to move to dismiss, dated 8/28/08).  In

other words, all three opt-in plaintiffs are time-barred from pursuing their claims and the

information in their affidavits is not probative.  Thus, Summa is the only plaintiff with non-time-

barred claims who provided even arguably competent supporting evidence.

In these circumstances, conditional class certification may not be granted because there is

no competent evidence that Summa and any other potential plaintiff "together were victims of a

common policy or plan that violated the law."  Scholtisek v. Eldre Corp., 229 F.R.D. 381, 387

(W.D.N.Y. 2005).  Conditional certification is properly denied when there is a complete lack of

evidence, beyond the plaintiff's own alleged experience, that other potential plaintiffs

experienced the same violations of the law.  Diaz, 2005 WL 2654270, at *5; Prizmic, 2006 U.S.

Dist. LEXIS 42627, at *8 (denying conditional certification where plaintiff submitted no

evidence to show he and other potential plaintiffs were victims of a common policy or plan,

made only "general allegations" in his complaint that he and others were denied overtime, and

provided no information on how plaintiff or other employees were paid, their job duties or the

hours they worked, and no other potential plaintiffs had been identified); Morales v. Plantworks,

Inc., No. 05 Civ. 2439 (DC), 2006 U.S. Dist. LEXIS 4267, at *4 (S.D.N.Y. Feb. 1, 2006)

(denying conditional certification because the submission of eight payroll stubs for three

plaintiffs was insufficient to support a finding that "they and potential plaintiffs together were

victims of a common policy or plan that violated the law," where plaintiffs offered no evidence

on other potential class members).

Finally, Summa's bare statement in her second affidavit that seven other individuals did not receive overtime compensation in accordance with the FLSA is pure hearsay and plainly insufficient to meet her burden of providing "actual evidence" that she and other potential plaintiffs were similarly situated.  See, e.g., Davis v. Charoen Pokphand (USA), Inc., 303 F. Supp. 2d 1272, 1277 (M.D. Ala. 2004) (noting that plaintiffs can show others desire to join litigation through affidavits from other employees, consents to join the lawsuit and expert evidence but not through their own statements).  Given the total absence of evidence presented by Summa of any other potential plaintiff with whom she allegedly was similarly situated with respect to an illegal common policy (apart from the three time-barred opt-ins), there is no longer any basis for conditional certification in this case.[5]

> **C.**   **The Magistrate Judge Erred In Conditionally Certifying A Class Comprised Of Student Assistants In A Wide Variety Of Diverse Positions Who Receive Stipends Or Other Forms Of Compensation For Participating In Extracurricular Activities Or Internships Because Adjudication Of Their Claims Would Require An Individualized Fact-Intensive Inquiry That Is Not Appropriate For Collective Treatment.**

Even assuming, arguendo, that plaintiffs had identified a common illegal policy or practice and presented sufficient competent evidence supporting their allegations, class treatment is still not appropriate in this case because of the multitude of different positions – and the diversity of duties within each position – included in the putative class as defined by the Magistrate Judge's Order.

There is no dispute regarding the breadth of the positions encompassed within the conditionally certified class.  These students perform a multitude of different tasks which vary

---

[5] The newly discovered evidence concerning Summa has even greater significance given that the three opt-in plaintiffs are time-barred from pursuing their claims in this action.  In light of their elimination from this action, Summa's apparent inability to serve as class representative undermines any basis for this case to proceed as a collective action.  The lack of competent evidence is further highlighted by the issues raised regarding Summa's ability to continue as a class representative in Defendant's motion for reconsideration and/or reargument.

depending upon their position, department, supervisor, the subject matter with which they interact, their level of education and experience, and their level of achievement.  (Miller-Suber Aff., ¶ 12).  This group includes such patently distinct roles as athletic team managers, resident assistants (who have been held to be exempt from FLSA coverage (see infra at 16)), student mentors, orientation counselors, musicians in the band or orchestra and singers/performers for various University events, and a host of other utterly dissimilar roles.  (Miller-Suber Aff., ¶ 10) Even among athletic team managers, there is variation in the duties and responsibilities based on the sport, size of the team and other factors.  (2/15/08 Affidavit of Jack Hayes ("Hayes Aff."), ¶ 4).  Such diverse positions and roles are not remotely similarly situated.

The error in including all of these diverse positions within a single class is that the Court will be compelled to make particularized, highly fact-intensive determinations with respect to each position – and likely with respect to each individual within in each position – as to whether he or she is even an "employee" subject to the FLSA and then if any of the other traditional FLSA exemptions apply.  The inclusion of these positions in a single class where such individualized inquiry will be necessary to determine each individual's status under the Act is contrary to law.

Indeed, the U.S. Department of Labor has recognized that students in programs conducted primarily for their benefit as a part of the educational opportunities provided to the students by a college or university is not "work" of the kind contemplated by the FLSA, and does not result in an employee-employer relationship between the student and the school.  29 U.S.C. § 203(g) (definition of "employ").  As the United States Supreme Court has recognized, the FLSA's definition of "employee" is circular and all-inclusive and Congress could not have intended to include within its reach all persons who work.  Walling v. Portland Terminal Co.,

14

330 U.S. 148, 152 (1947).  In the spirit of <u>Walling</u>, the Wage and Hour Division of the U.S.

Department of Labor ("DOL") has set forth a six-part test to determine whether students, interns,

trainees, and the like should be considered employees under the FLSA.  The six factors (the

"<u>Walling</u> Factors") look to whether:  (i) the training is similar to what would be given in a

vocational school or academic education instruction; (ii) the training is for the benefit of the

trainees or students; (iii) the trainees or students do not displace regular employees, but work

under their close observation; (iv) the employer that provides the training derives no immediate

advantage from the activities of the trainees or students; (v) the trainees or students are not

necessarily entitled to a job at the conclusion of the training period; and (vi) the employer and

the trainees or students understand that the trainees or students are not entitled to wages for the

time spent in training.  <u>See</u> DOL Opinion Letter Student Externs/FLSA Applicability, FLSA

2006-12 (Apr. 6, 2006).  <u>See also</u> DOL Letter, 21 BA 941 (Sept. 13, 1967) (noting that where

training is for primary benefit of students it will not be considered work).  By its very

application, this requires a different inquiry for each position included within the putative class.

    In its Field Operations Handbook ("FOH"), the DOL has amplified on its position as to

why student assistants holding positions like Football Team Managers are not employees and

subject to the FLSA:

> As part of their overall education program . . . institutions of higher
> learning may permit or require students to engage in activities in
> connection with dramatics, student publications, glee clubs, bands, choirs,
> debating teams, radio stations, intramural and <u>interscholastic athletics</u> and
> other similar endeavors.  Activities of students in such programs,
> conducted primarily for the benefit of the participants as a part of the
> educational opportunities provided to the students by the school or
> institution, are not "work" of the kind contemplated by Sec. 3(g) of the
> Act and do not result in an employee-employer relationship between the
> student and the school or institution.  Also, <u>the fact that a student may</u>
> <u>receive a minimum payment for participation in such activities would not</u>

necessarily create an employment relationship.  FOH § 10b03(e)
(emphasis added).

Notably, DOL's position is in accord with decisions of other agencies that have found in
related settings that student assistants are not "employees" under the act at issue.  See, e.g.,
Brown Univ., 342 N.L.R.B. 483, 489 (2004) (holding graduate student assistants are not
"employees" under the National Labor Relations Act where their relationship to the university
was primarily educational and they benefited from performing services related to their
educational program).  And following the DOL's enforcement position, courts, too, have
concluded that student assistants are not "employees" subject to the FLSA.  See, e.g., Marshall v.
Regis Educ. Corp., 666 F.2d 1324, 1328 (10th Cir. 1981) (holding that Resident Assistants are
not employees for purposes of the FLSA where they benefited from the opportunity to grow and
develop as peer leaders).

Application of the Walling Factors and the FOH demonstrates that Plaintiffs were not
employees under the FLSA.  As its title implies, a Football Team Manager engages "in activities
in connection with athletics."  As described supra, moreover, each of the Plaintiffs derived a
number of benefits from their experiences as Football Team Managers including exposure as to
how to run an athletic team, the experience of working on the athletic field, traveling through the
Northeast, improving interpersonal and organizational skills, and making a valuable addition to
their resumes due to the varied nature of the operational duties performed.  Plaintiffs did not
displace regular employees because if the position did not exist, the duties performed by the
Football Team Manager would otherwise have been performed by an existing employee or the
student athletes.  (Hayes Aff., ¶ 12).  As to the stipend Plaintiffs received, there was no
understanding between Plaintiffs and Hofstra that the stipend constituted wages, or that Plaintiffs
would otherwise be entitled to payment for services rendered.  (Miller-Suber Aff., ¶ 9).  To the

16

contrary, the stipend was meant only to reasonably approximate Plaintiffs' incidental expenses, such as a missed meal, incurred while serving as Team Managers.  (Id.).

In any event, the very existence of this unique set of standards developed by the courts and the DOL for determining the status under the Act for students in internships (in an educational or academic setting) – not to mention the fact that one position in the putative class (resident assistants) has been held to be exempt from the FLSA, as noted above – demonstrates that the Magistrate Judge erred in finding this diverse group of positions to be appropriate for collective treatment.  To adjudicate the claims asserted in this action, the Court will be required to conduct an individualized inquiry as to every single putative class member, involving an application of the Walling Factors, to determine whether he or she even is an "employee" subject to the Act.  Where such a particularized factual and legal analysis of the details of each class member's duties and responsibilities is required, courts decline to grant conditional class certification.

For example, in Morisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 493 (D.N.J. 2000), the plaintiffs contended that their employer had misclassified all of them as exempt administrative employees as part of a "common scheme" to deny them overtime.  Id. at 498.  In rejecting plaintiffs' request for conditional certification the court noted that, as here, "plaintiffs do not even discuss the job responsibilities of the opt-in plaintiffs."  Id.  Further, as is the case here, the determination of whether the employees were, in fact, misclassified "depend[ed] on an individual, fact-specific analysis of each employee's job responsibilities under the relevant statutory exemption criteria."  Id. (emphasis added).  Certification in this circumstance was denied, because granting it would result in certification of "a class based upon [plaintiff's] own belief as to which employees did not satisfy any of the exemption criteria — the very issue to be

17

litigated in th[e] action," and if litigated "as a collective action would be anything but efficient." Id. at 499.

Similarly, in Diaz, the court denied conditional class certification on the ground, inter alia, that determination of the plaintiff's and putative plaintiffs' claims required an examination with respect to each individual of his or her exempt or nonexempt status. The court noted that although these employees shared the same title and job description, "their responsibilities, in fact, may differ and thus a highly fact-specific and detailed analysis of each [employee's] duties is required, making class treatment inappropriate." Diaz, 2005 WL 2654270 at *4. See also Myers v. Hertz Corp., No. 02-CV-4325 (BMC)(MLO), 2007 U.S. Dist. LEXIS 53572, at *1-2 (E.D.N.Y. July 24, 2007) (noting this Court's earlier decision denying certification and notice where liability as to each putative plaintiff depended on whether that plaintiff was correctly classified as exempt and would require a fact-intensive inquiry into each potential plaintiff's employment status); Mike v. Safeco Ins. Co. of Am., 274 F. Supp. 2d 216, 221 (D. Conn. 2003) (denying conditional class certification where the plaintiff claimed that he was misclassified as exempt "[b]ecause the proof in th[e] case [was] specific to the individual" and "any other plaintiff would also have to present specific evidence of his or her daily tasks, and the court would have to apply the [FLSA] regulations on an individual basis...and engage in an ad hoc inquiry for each proposed plaintiff to determine whether his or her job responsibilities were similar to [plaintiff's]"); Reich v. Homier Distrib. Co., 362 F. Supp. 2d 1009, 1013-14 (N.D. Ind. 2005) (denying certification because "potential class members [are not] similarly situated where liability depend[s] on an individual determination of each employee's duties."); Clausman v. Nortel Networks, Inc., No. IP 02-0400-C-M/S, 2005 U.S. Dist. LEXIS 11501 at *13 (S.D. Ind. May 1, 2003) (withdrawing certification because "members of [defendant's] sales staff

18

performed their duties in a variety of ways, making individual inquiry necessary to determine whether each was properly classified" and "the factual inquiry necessary to make that determination weighs heavily against conditionally certifying a plaintiff class") (emphasis added); Harris v. FFE Transp. Servs., Inc., No. 3:05-CV-0077-P, 2006 U.S. Dist. LEXIS 51437, at *14 (N.D. Tex. May 15, 2006) (noting that "multiple courts in this circuit and elsewhere have refused to conditionally certify a class at the first stage of the analysis when the determination of whether certain employees were improperly classified as exempt would require a highly individualized inquiry."); Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265, 1274-75 (M.D. Ala. 2004) (denying conditional class certification and finding that plaintiffs were not similarly situated because "the court would have to inquire . . . as to the daily tasks of each putative collective action member to determine whether they are similarly situated to the persons identified by the Plaintiffs, and then, on the merits, whether they had suffered an FLSA violation because they were not eligible for overtime compensation. Only once those determinations had been made could any collective proof as to the number of overtime hours be relevant."); Pfohl v. Farmers Ins. Group, No. CV 03-3080 DT (RCX), 2004 U.S. Dist. LEXIS 6447 at *30 (C.D. Cal. Mar. 1, 2004) ("the exempt or non-exempt status of hundreds of independent contractor adjusters would need to be determined on an employee-by-employee basis. This would be inefficient and impractical, thereby defeating the purpose of a collective action.").

Here, in light of the myriad of different student assistant positions performing a wide range of different functions, the determination of each Undergraduate or Graduate Assistant's status as "employee" or "assistant" turns on an individualized application of the factors articulated in Walling v. Portland Terminal Co., 330 U.S. 148, 152 (1947), and further explicated by the U.S. Department of Labor's Field Operations Handbook, to each assistant's particular

19

circumstances.  Under the above-cited precedent, such individualized determinations make a collective action inappropriate, as in such an instance there is no "basis to conclude that questions common to a potential group of plaintiffs would predominate a determination" of the case's merits, <u>Mike</u>, 274 F. Supp. 2d at 220, and thus it was contrary to law and clearly erroneous to conditionally certify the class here.

**D.     The Magistrate Judge's Refusal To Consider Issues Related To The "Merits" Of This Action Is Contrary To Law.**

As demonstrated, the threshold question raised by plaintiffs' claim in this action is whether they and putative class members are "employees" under the Act.  By definition, this requires some recognition that under the law, an individualized factual inquiry would be required.  The Magistrate Judge incorrectly held that this is a "merits" question not before the Court at this stage of the litigation.  (Order at 7, 8)  The Magistrate Judge's blanket refusal to look at an issue that relates to the "merits" of plaintiffs' claim, where the presence of this question would enmesh the Court in precisely the type of particularized factual and legal analysis of each class member that is directly antithetical to collective treatment, was clearly erroneous and contrary to law.

The Magistrate Judge's termination of her analysis, with the conclusion that it is too early in the litigation to decide whether the student assistants are "employees" subject to the FLSA, is incorrect.  (Order at 8)  Plaintiffs' claim, in reality, is a challenge to Hofstra's determination that they were not subject to FLSA coverage.  Under the Second Circuit's rationale in <u>In re Initial Pub. Offering Sec. Litig. ("In re IPO")</u>, 471 F.3d 24 (2d Cir. 2006), a case involving a Rule 23 class action which was recently held by Judge Cote of the Southern District of New York to be applicable in the FLSA collective action context, it is clear that a court not only may but <u>should</u>

20

review the merits of a claim when deciding whether putative class members are similarly situated

under the FLSA.  As Judge Cote explained:

> Although district courts have held that the merits of a plaintiff's FLSA
> claim should not be evaluated in determining whether to authorize notice,
> see, e.g., Lynch, 491 F. Supp. 2d at 368, these holdings may have derived
> from jurisprudence discouraging engagement with the merits that was
> developed in the context of Rule 23 class action certification.  Fed. R. Civ.
> P. 23.  But, the Second Circuit in In re Initial Pub. Offering Sec. Litig. ("In
> re IPO"), 471 F.3d 24 (2d Cir. 2006), recently clarified that courts
> deciding whether to certify a class action must determine that each Rule
> 23 requirement has been met, and that "the obligation to make such
> determinations is not lessened by overlap between a Rule 23 requirement
> and a merits issue." Id. at 41.  This Court will, therefore, scrutinize the
> merits based on the record developed to date by the parties and to the
> extent necessary to address this motion for authorization of notice.

Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 467 n.9 (S.D.N.Y 2008).  On this

basis, Judge Cote proceeded to analyze whether various exemptions applied to the putative

plaintiffs in that case such that authorization of class notice would not be appropriate.

Ultimately, Judge Cote determined that an exemption did apply and therefore declined to

authorize notice to the proposed class members as "such notice would not promote the fair and

expeditious resolution of the claims raised in this action."  Id. at 477.

Here, although the specific question at this juncture is whether the student assistants are

"employees" under the Act as opposed to whether they are exempt or nonexempt, the same

principle applies.  The reasoning of Amendola is consistent with cases from other jurisdictions

and other courts in the Second Circuit.  A recent decision by the District Court for the Southern

District of Illinois, Bunyan v. Spectrum Brands, Inc., No. 07-CV-0089-MJR, 2008 U.S. Dist.

LEXIS 59278, at 18-19 (S.D. Ill. July 31, 2008), illustrates why consideration of the merits is

critical at this juncture.  In Bunyan, the court denied conditional class certification on the ground

that the plaintiffs' and potential plaintiffs' claims that they were deprived overtime pay in

21

violation of the Act required an individualized determination of whether each putative class

member was properly classified as exempt under the Act.  The Court explained that

> While the Court considers the defenses available to the Defendants, this
> analysis does not consider whether the defense itself is meritorious.  The
> Court states no opinion as to whether Plaintiffs are actually exempt employees
> under the FLSA.  Rather, the analysis here simply indicates that conditional
> certification would be inefficient because the Court will have to undertake an
> analysis of each employee's work responsibilities in order to decide the issue.

Id. at 27 n.5.

The Court should consider whether the putative class members are subject to the Act

and/or whether the particularized analysis required to make that determination is even possible,

as a practical matter, in a collective action.  Even if this is labeled a "merits" question, the

Magistrate Judge's blanket refusal to review an issue relating to the merits of the case which

bears directly upon the appropriateness of class treatment was clearly erroneous and contrary to

law.

**E.   To The Extent That Conditional Class Certification Would Be Appropriate With Respect To Any Group Of Student Assistants, Plaintiffs' Showing Permits Nothing More Than Conditional Certification Of A Class Limited To Football Team Managers.**

While plaintiffs do not have the burden of conclusively proving that the proposed class is

similarly situated at this stage of the litigation, they are not entitled to class certification absent a

showing based on "actual evidence of a factual nexus between [Plaintiffs'] situation and those

that [they claim] are similarly situated, rather than mere conclusory allegations." Prizmic, 2006

U.S. Dist. LEXIS 42627, at *7 (emphasis added); accord, Diaz, 2005 WL 2654270 at *3.

Plaintiffs have made no showing whatsoever regarding any other undergraduate or graduate

assistant position at Hofstra apart from their own circumstances as Football Team Managers, and

therefore to the extent any class is conditionally certified, that class must be limited to students

who held the position of Football Team Managers.

This conclusion is further compelled by the indisputably distinct nature of the duties and responsibilities of the Football Team Manager position.  The primary job responsibility of a Football Team Manager is to assist the coaches before, during, and after practices.  (Hayes Aff. ¶ 8).  This assistance consisted of a diverse set of tasks including:  (i) helping, organizing and scheduling practices; (ii) arranging the logistics of travel arrangements for the football team, the cheerleaders and team supporters; (iii) attending to the team's video and technical needs; (iv) attending to the team's medical and training room needs; and (v) attending to the team's equipment room needs.  (Hayes Aff., ¶ 8).  In contrast, student mentors and orientation counselors, to name just two examples of other assistant positions, perform functions that in no way resemble the role of a Football Team Manager.

Furthermore, the duties of the Football Team Manager are unique and cannot be equated with other Team Manager positions. (Hayes Aff., ¶ 16).  For example, the Football Team Manager is primarily responsible for assisting at practices.  He or she sets up the football field, brings out the equipment, arranges the locker room before practices, and calls out the periods during practice.  At away games, the Football Team Manager does things like order pizza for the student athletes to share in their hotel rooms.  (Hayes Aff., ¶ 16).

Based on these facts, there can be no serious question as to the uniqueness of the duties performed by plaintiffs as Football Team Managers.  Clearly, these duties, characteristics, and nature of the Football Team Manager's role is wholly dissimilar from that of a resident assistant, a student mentor, an orientation counselor, or musician in a band or orchestra.  Indeed, plaintiffs have submitted no "actual evidence" regarding the duties or responsibilities of any of the scores of different undergraduate or graduate assistant opportunities at Hofstra besides their own experience as Football Team Managers.  In the absence of such evidence, there simply is no

23

basis for certifying a class that consists of any assistants other than those as to whom the evidence demonstrates a factual nexus – i.e., other Football Team Managers.

Thus, to the extent the evidence supports conditional class certification of any group of student assistants, that class must be limited to Football Team Managers during the notice period and no one else.  Plaintiffs have failed to demonstrate a factual nexus between their own situations and any other student assistant.  See Sherrill v. Sutherland Global Servs., 487 F. Supp. 2d 344, 350 (W.D.N.Y. 2007) (granting notice but limiting it to telemarketing employees at each of the employer's call centers where plaintiffs had not demonstrated that the alleged illegal policy affected hourly employees other than the telemarketing agents). Accordingly, the Order is contrary to law.

## II.     THE COURT SHOULD ORDER THAT PLAINTIFFS' PROPOSED NOTICE CONFORM TO THE CONDITIONALLY CERTIFIED CLASS.

Plaintiffs' proposed notice was directed to all undergraduate and graduate assistants during the specified time-period (which the Magistrate Judge correctly reduced from the proposed six years to three years).  The Magistrate Judge conditionally certified a class consisting of "all Hofstra Undergraduate or Graduate Assistants within the past three years who did not receive the prevailing minimum wage and/or overtime compensation."  (Order at 10) While the Magistrate Judge ordered that plaintiffs' proposed notice be modified to reflect the reduced notice period, no other modification to the proposed notice was ordered.  As a result, the notice remains directed to a class of undergraduate or graduate assistants (all of them since August 2005) that is broader than the class that was conditionally certified (comprised of only those who were not paid the prevailing minimum wage and/or overtime compensation).  In other words, the notice in its present form is directed to potentially thousands of undergraduate and graduate assistants who do not fall within the class that the Magistrate Judge conditionally

24

certified, and if left unmodified would cause needless cost and confusion.  See, e.g., Alliance to End Repression v. Rochford, 75 F.R.D. 441, 447 (N.D. Ill. 1977) (staying discovery on class issues pending appeal due to a "possibility that needless discovery might occur").  Accordingly, the Court should order that the notice be modified to conform accurately to the scope of the class conditionally certified by the Magistrate Judge.

In addition, if the Court determines that the scope of the class should be modified in any way from the class defined by the Magistrate Judge's Order, we request that the Court also direct modification of the notice so as to conform with the modified class that it conditionally certifies.

## CONCLUSION

For the foregoing reasons, this Court should reverse Magistrate Judge Lindsay's August 14, 2008 Order.

By: s/ Elise M. Bloom
Elise M. Bloom
Brian J. Gershengorn
PROSKAUER ROSE LLP
1585 Broadway
New York, NY  10036-8299
Phone: (212) 969-3000
Fax: (212) 969-2900

Email: ebloom@proskauer.com
*Attorneys for Defendant*

Dated: New York, New York
       August 28, 2008