**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------- x

LAUREN E. SUMMA, on behalf of herself          :
individually, and on behalf of all similarly     :
situated employees,                              :          CV 07-3307 (DRH)(ARL)
                                                 :
                             Plaintiff,          :
                                                 :
              v.                                 :
                                                 :
HOFSTRA UNIVERSITY,                              :
                                                 :
                             Defendant.          :
-------------------------------------------------------- x


# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
# MOTION FOR FINAL APPROVAL OF SETTLEMENT


THOMPSON WIGDOR LLP

85 Fifth Avenue
New York, NY 10003
Phone: (212) 257-6800
Facsimile: (212) 257-6845

Counsel for Class Members

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ............................................................................................. 1

BACKGROUND .............................................................................................. 2

    A.  Plaintiff's Allegations And Defendant's Defenses ................................... 2

    B.  Discovery And Mediation ......................................................................... 2

    C.  Settlement Terms ...................................................................................... 3

    D.  Factors Considered In The Settlement Of The Claims ............................. 5

    E.  Class Members' Response To The Settlement .......................................... 6

ARGUMENT .................................................................................................... 6

    I.  The Proposed Settlement Class Satisfies The Requirements Of Section 216(b) ........... 6

        1.  Factual And Employment Settings Of The Individual Plaintiffs ........................... 7

        2.  Individualized Defenses .................................................................... 9

        3.  Fairness And Procedural Considerations ............................................. 9

    II.  The Proposed Settlement Is Fair, Reasonable, Adequate, And Should Be Approved ............... 10

        1.  The Proposed Settlement Is Procedurally Fair .................................... 11

        2.  The Proposed Settlement Is Substantively Fair ................................. 12

            i.  Litigating Through Trial Would Be Complex, Costly, And Long (Grinnell Factor I) ............ 12

            ii.  The Reaction Of The Class Has Been Positive (Grinnell Factor 2) .......... 13

           iii.  Discovery Has Advanced Far Enough To Allow The Parties To Resolve The Case (Grinnell Factor 3) ............ 13

           iv.  The Risk Of Establishing Liability (Grinnell Factor 4) ............ 13

            v.  The Risk Of Establishing Damages (Grinnell Factor 5) ............ 14

vi.  Establishing A Class And Maintaining It Through Trial Would Not Be Simple (Grinnell Factor 6)........................................................................14

vii.  Defendants' Ability To Withstand Greater Judgment (Grinnell Factor 7) ....................................................................................15

viii.  The Settlement Fund Is Substantial In Light Of The Possible Recovery And The Attendant Risks of Litigation (Grinnell Factors 8 and 9)...........15

III. The Notice to The Class Members Is Proper..............................................................16

IV. The Party Plaintiffs Merit The Proposed Enhancement Awards................................17

V. Class Counsel's Attorneys' Fees Should Be Approved ..............................................18

CONCLUSION...................................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Allende v. Unitech Design, Inc.*,
  783 F Supp. 2d 509 (S.D.N.Y. 2011) ............................................................19

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
  522 F.3d 182 (2d Cir. 2008) ......................................................................19

*Ayers v. SGS Control Services, Inc.*,
  No. 03 Civ. 9077 (RMB), 2007 WL 646326 (S.D.N.Y. Feb. 27, 2007) ....................8, 9

*Bifulco v. Mortgage Zone, Inc.*,
  262 F.R.D. 209 (E.D.N.Y. 2009) ....................................................................6

*Bliven v. Hunt*,
  579 F.3d 204 (2d Cir. 2009) ......................................................................19

*Chowdury v. Duane Reade*,
  No. 06 Civ. 2295 (GEL), 2007 U.S. Dist. LEXIS 73853 (S.D.N.Y. Oct. 2, 2007)............7

*Cisek v. National Surface Cleaning, Inc.*,
  954 F. Supp. 110 (S.D.N.Y. 1997) ................................................................19

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ..................................................................11, 15

*Diaz v. Scores Holding Co., Inc.*,
  No. 07 Civ. 8718 (THK), 2011 WL 6399468 (S.D.N.Y. July 11, 2011) ........................10

*D.S. v. N.Y. City Dep't. of Educ.*,
  255 F.R.D. 59 (E.D.N.Y. 2008)....................................................................15

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ..............................................................15, 17

*Glover v. Crestwood Lake Section 1 Holding Corp.*,
  No. 89 Civ. 5386 (MJL), 1991 WL 64172 (S.D.N.Y. Apr. 10, 1991) ..........................15

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ......................................................................18

*Hens v. ClientLogic Operating Corp.*,
  No. 05 Civ. 381S (WMS), 2006 WL 2795620 (W.D.N.Y. Sept. 26, 2006)........................6

*Hicks v. Morgan Stanley & Co.*,
  No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................11

*Indergit v. Rite Aid Corp.*,
  08 Civ. 9361 (PGG), 2010 WL 2465488 (S.D.N.Y. June 16, 2010)................................7

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........................................................................12

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................................11

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................................................15

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) .......................................................................15

*In re Painewebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ...............................................................................14

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
  No. 06 Civ. 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008).....................13, 15

*In re Telik, Inc. Sec. Litig.*,
  576 F Supp. 2d 570 (S.D.N.Y. 2008) .........................................................................18

*Jacobs v. New York Foundling Hospital*,
  483 F.Supp.2d 251 (E.D.N.Y. 2007) ...........................................................................7

*Jason v. Falcon Data Com, Inc.*,
  No. 09 Civ. 03990 (JG)(ALC), 2011 WL 2837488 (E.D.N.Y. July 18, 2011) ................7

*Johnson v. Ga. Highway Express, Inc.*,
  488 F.2d 714 (5th Cir.1974) ......................................................................................18

*Karic v. Major Automotive Companies, Inc.*,
  799 F. Supp. 2d 219 (E.D.N.Y. 2011) ..........................................................................6

*Khait v. Whirlpool Corp.*,
  No. 06 Civ. 6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)..........................10

*Maley v. Del Global Tech. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...............................................................12, 13, 14

*Misiewicz v. D'Onofrio General Contractors Corp.*,
    No. 08 Civ. 4377 (KAM)(CLP), 2010 WL 2545439 (S.D.N.Y. May 17, 2010)..............19

*Morgenstern v. County of Nassau*,
    No. 04 Civ. 58 (ARL), 2009 WL 5103158 (E.D.N.Y. Dec. 15, 2009)......................21, 22

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010), cert. denied, 132 S. Ct. 368 (2011) ......................7

*Pilitz v. Incorporated Village of Freeport*,
    No. 07 Civ. 4078 (ETB) 2011 WL 5825138 (E.D.N.Y. Nov. 17, 2011).........................21

*Scott v. Aetna Services, Inc.*,
    210 F.R.D. 261 (D. Conn. 2002) ...................................................................8

*Scott v. City of New York*,
    643 F.3d 56 (2d Cir. 2011) ........................................................................21

*Sherrill v. Sutherland Global Servs., Inc.*,
    487 F. Supp. 2d 344 (W.D.N.Y. May 11, 2007) .................................................6

*Simmons v. New York City Transit Authority*,
    575 F.3d 170 (2d Cir. 2009) ......................................................................18

*Teachers' Ret. Sys. v. A.C.L.N. Ltd.*,
    No. 01 Civ. 11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004) .........................15

*Torres v. Gristede's Operating Corp.*,
    No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006)...................................7, 9

*VVP Maliza v. 2001 MAR-OS Fashion, Inc.*,
    No. 07 Civ. 463 (ERK)(VVP), 2010 WL 502955 (E.D.N.Y. Feb. 10, 2010) ..................18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) .......................................................11, 13, 14, 15

*Wilkes v. Pep Boys*,
    No. 3:02 Civ. 0837(AAT), 2006 WL 2821700 (M.D. Tenn. Sept. 26, 2006)....................8

*Willix v. Healthfirst, Inc.*,
    No. 07 Civ. 1143 (ENV)(RER), 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ................10

**FEDERAL STATUTES**

29 U.S.C. §216(b)....................................................................................18

**OTHER AUTHORITIES**

*Newberg on Class Actions* § 11:53 (4th ed. 2002) .......................................................................16

## INTRODUCTION

Pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA"), Plaintiff Lauren Summa ("Plaintiff" or "Class Representative"), on behalf of herself and the individuals she represents, applies to this Court for final approval of a proposed settlement in this wage and hour collective action.  This action was brought on behalf of certain employees of Defendant Hofstra University ("Defendant").  The settlement will resolve all remaining claims brought before this Court in this action pursuant to the proposed compromise set forth in the Joint Stipulation of Settlement and Release (the "Settlement Agreement"). (Datoo Dec. Ex. A).[1]  The Class Members are defined as "all Hofstra Undergraduate and Graduate Assistants within the past three years who did not receive the prevailing minimum wage and/or overtime compensation." (Datoo Dec. Ex. A).

In a Memorandum and Order dated October 24, 2011 (the "Order"), this Court preliminarily approved the proposed settlement because it "appear[ed] to fall within the range of possible approval." (Datoo Dec. Ex. B).  Pursuant to the Order, the Claims Administrator, who was retained by Thompson Wigdor LLP ("Class Counsel"), mailed the approved Notices of Settlement of Collective Action Lawsuit (the "Settlement Notice"), the Claim Form, and the Request for Exclusion form to all Class Members. (Datoo Dec. ¶ 17 and Exs. C, D, E).  Class Members had 45 days from the mailing of the Settlement Notice to return the Claim Form, contest the amount of their share of the settlement, opt out of the settlement and/or object to its terms. (Datoo Dec. Ex. A).  Only two (2) Class Members opted out and no Class Members objected. (Datoo Dec. ¶ 17).

---

[1]     The Declaration of Shaffin A. Datoo ("Datoo Dec.") is submitted herewith.

# BACKGROUND

## A.    Plaintiff's Allegations And Defendant's Defenses

Plaintiff filed this action against Defendant on August 9, 2007, on behalf of herself and others similarly situated, alleging wage and hour violations under the FLSA and the New York Labor Law. (Datoo Dec. Ex. F).  Specifically, the Complaint in this action alleged that Defendant unlawfully failed to pay the minimum wage and/or overtime to its Graduate and Undergraduate Assistants. (Datoo Dec. Ex. F).  In August 2007, Emily DeGaglia, Lynn Ann Sumner and Dawn Sumner (collectively, along with Plaintiff, the "Party Plaintiffs") consented to join the action. (Datoo Dec. Ex. I).  Subsequently, the Party Plaintiffs consented to dismiss their New York Labor Law claims. (Datoo Dec. Ex. J).

According to its Answer, Defendant has consistently denied any liability or wrongdoing of any kind associated with the claims in this action. (Datoo Dec. Ex. G).  Defendant maintains that it paid Class Members in accordance with federal and state wage and hour laws. (Datoo Dec. Ex. G).

## B.    Discovery And Mediation

The parties conducted substantial discovery prior to settling this action.  For example, prior to the final mediation, the parties formally and informally exchanged information and approximately 2500 documents that they agreed were relevant to settlement discussions. (Datoo Dec. ¶ 18).  Class Counsel reviewed these documents, which included payroll records, to determine the extent of Defendant's potential liability and damages, and to prepare Plaintiff's factual and legal positions. (Datoo Dec. ¶ 18).

In an effort to resolve this action, the parties attended two separate mediations. (Datoo Dec. ¶ 19).  The final mediation took place on April 11, 2011, before Mark Rudy, of Rudy,

Exelrod & Zieff, LLP. (Datoo Dec. ¶ 19).   After conducting extensive formal and informal discovery described above, and investigating the facts, Plaintiff and Class Counsel concluded that it was in the best interests of the Class Members to resolve this action considering the risks of proving Defendant's liability and the amount of wages owed, Defendant's legal and factual defenses, the risk of loss at trial, the likelihood of an appeal by Defendant if Plaintiff prevailed at trial, and the attendant delay in the recovery.

## C.   **Settlement Terms**

The Settlement Agreement provides that Defendant's maximum payment will be Four Hundred Eighty-Five Thousand Dollars ($485,000), which includes attorneys' fees, costs, administration expenses and enhancement fees. (Datoo Dec. Ex. A).   From this amount, a maximum of Two Hundred Eighty Five Thousand Dollars ($285,000) shall be paid to Class Counsel as attorneys' fees and costs.[2] (Datoo Dec. Ex. A).   Two Hundred Thousand Dollars ($200,000) shall be the net settlement amount ("NSA") from which Class Members who submitted a Claim Form ("Settlement Class Members") will receive their allocated share. (Datoo Dec. Ex. A).   Before any allocations are made, enhancement fees and all costs of administration will be deducted from the $200,000.[3] (Datoo Dec. Ex. A).   The remainder (hereinafter "NSA Payments") shall be distributed according to the below formula. (Datoo Dec. Ex. A).

Due to variations in the way in which Class Members were compensated by Defendant, certain Class Members suffered greater damages than others. (Datoo Dec. ¶ 16).   Accordingly,

---

[2]   With the Court's approval, Class Counsel shall receive attorneys' fees equal to $279,009.51 and reimbursement for costs in the amount of $5,990.49.

[3]   The Settlement Agreement states that Plaintiff shall receive an enhancement fee of $5,000, and each of the other three Party Plaintiffs will receive an enhancement fee of $1,000. (Datoo Dec. Ex. A).   Class Counsel estimates that the cost of administration will be approximately $10,000. (Datoo Dec. ¶ 17).

after a careful analysis of payroll records, it was determined that Class Members should be split into three categories of employees: (a) those who worked primarily in a Stipend position (who suffered the greatest damages per Class Member); (b) those who worked primarily in an Hourly position (who suffered the least damages per Class Member); and (3) those who worked in both Stipend and Hourly positions (who suffered more damages per Class Member than Hourly employees, but less than Stipend employees). (Datoo Dec. ¶ 16 and Ex. A).  Accordingly, the individual settlement amounts for the Class Members are calculated as follows:

(1)    Twenty (20) percent of the NSA will be allocated to Class Members classified as having worked in a Stipend position.[4]  Ten (10) percent of the NSA will be allocated to Class Members classified as having worked in a Stipend and Hourly position.  Seventy (70) percent of the NSA will be allocated to Class Members classified as having worked in an Hourly position.[5]

(2)    Each Class Member classified as having worked in a Stipend Position will receive a percentage of the allocated Fund.  The percentage that each Class Member classified as having worked in a Stipend Position will receive is the percentage resulting from dividing their gross earnings by the aggregate amount of gross earnings of all Class Members classified as having worked in a Stipend Position.

Each Class Member classified as having worked in a Stipend and Hourly position will receive a percentage of the allocated Fund.  The percentage that each Class Member classified as having worked in a Stipend and Hourly Position will receive is the percentage resulting from dividing their gross earnings by the aggregate amount of gross earnings of all Class Members classified as having worked in a Stipend and Hourly Position.

Each Class Member classified as having worked in an Hourly position will receive a percentage of the allocated Fund.  The percentage that each Class Member classified as having worked in an Hourly Position will receive is the percentage resulting from dividing their gross earnings by the aggregate amount

---

[4]    That only 20% of the NSA is allocated to Stipend Class Members is explained by the fact that, despite having sustained the most damages per Member, there are far fewer Stipend Class Members than Hourly Class Members. (Datoo Dec. ¶ 16).

[5]    That 70% of the NSA is allocated to Hourly Class Members is explained by the fact that, despite having sustained the least damages per Member, there are far more Hourly Class Members than Stipend Class Members. (Datoo Dec. ¶ 16).

of gross earnings of all Class Members classified as having worked in an Hourly Position.

(3)  Class Members' and Defendant's applicable payroll taxes shall be deducted from such amounts.

(Datoo Dec. Ex. A).

Any portion of the enhancement fees, attorneys' fees and/or costs not approved by the Court, as well as any checks not cashed by Settlement Class Members, shall revert back to Defendant. (Datoo Dec. Ex. A).

In return for the above consideration, Class Members who do not opt out will release Defendant from all claims of any nature arising from or relating to this action. (Datoo Dec. Ex. A).

## D. **Factors Considered In The Settlement Of The Claims**

Plaintiff and Class Counsel weighed the strengths, weaknesses and complexities of this action against the benefit of receiving a large percentage of the damages sought without the risks of further litigation.  Throughout the litigation, Defendant denied liability or wrongdoing with respect to the claims.

Plaintiff and Class Counsel also thoroughly analyzed Defendant's factual and legal defenses, examined documents and other information produced by Defendant, reviewed the defenses and documents with Plaintiff, and assessed the strength of Defendant's arguments. Additionally, in considering the possibility of settlement, Plaintiff and Class Counsel accounted for the time, delay, and costs of further discovery, motion practice, trial and appeals.  Both parties also took into account that if Plaintiff prevailed at trial, Defendant would be liable for attorneys' fees.

E.      **Class Members' Response To The Settlement**

The response to the settlement was extremely positive.  The Claims Administrator mailed two hundred sixty (260) Settlement Notices, Claim Forms and Request for Exclusion forms to Class Members. (Datoo Dec. ¶ 17).  One hundred twenty five (125) Class Members submitted Claim Forms, including five (5) Class Members who contested the amount of their share of the settlemen. (Datoo Dec. ¶ 17).  Only two (2) Class Members opted out of the settlement, and most importantly, no Class Member objected to the settlement. (Datoo Dec. ¶ 17).

## ARGUMENT

I.      **The Proposed Settlement Class Satisfies The Requirements Of Section 216(b)**

"'Collective actions brought under the FLSA are different in various respects from class actions under Rule 23 of the Federal Rules of Civil Procedure.'" Bifulco v. Mortgage Zone, Inc., 262 F.R.D. 209, 213 (E.D.N.Y. 2009) (citing Sherrill v. Sutherland Global Servs., Inc., 487 F. Supp. 2d 344, 348 (W.D.N.Y. May 11, 2007)).  With respect to the requirements for class certification, "a named plaintiff in a collective action need not demonstrate . . . numerosity, commonality, typicality, and adequacy of representation - which are required to bring a class action." Bifulco, 262 F.R.D. at 348, (citing Hens v. ClientLogic Operating Corp., No. 05-CV-381S (WMS), 2006 WL 2795620, at *3 (W.D.N.Y. Sept. 26, 2006)).

In determining whether a suit may proceed as a collective action under the FLSA, courts employ a two-step analysis.  The first step involves looking to the pleadings and affidavits to determine whether plaintiffs have satisfied "the minimal burden of showing that the similarly situated requirement is met.  To meet this burden, plaintiffs need only make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Karic v. Major Automotive Companies, Inc., 799

F. Supp. 2d 219, 223-24 (E.D.N.Y. 2011) (quotations and citations omitted).  In this case, the first stage of the inquiry was satisfied when conditional certification was granted on August 14, 2008. (Datoo Dec. Ex. H).

"At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs. Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010) (cert. denied, 132 S. Ct. 368 (2011)).

It is well established that the following factors are considered in determining whether class members are similarly situated: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." Jason v. Falcon Data Com, Inc., No. 09-CV-03990 (JG)(ALC), 2011 WL 2837488, *4 (E.D.N.Y. July 18, 2011); see also Jacobs v. New York Foundling Hospital, 483 F.Supp.2d 251 (E.D.N.Y. 2007); Torres v. Gristede's Operating Corp., No. 04 Civ. 3316, 2006 WL 2819730, *9 (S.D.N.Y. Sept. 29, 2006).

## 1.    Factual And Employment Settings Of The Individual Plaintiffs

Although the factual and employment settings of the class members are considered when deciding whether to certify an FLSA collective action, a §216(b) motion cannot be defeated "simply by pointing out all the ways in which plaintiff's exact day-to-day tasks differ from those of the opt-in plaintiffs; instead, defendants must show that plaintiffs are not similarly situated *in ways relevant* to their entitlement to overtime compensation under FLSA . . . ." Indergit v. Rite Aid Corp., 08 CIV. 9361 (PGG), 2010 WL 2465488, *8 (S.D.N.Y. June 16, 2010) (emphasis in original) (quoting Chowdury v. Duane Reade, No. 06 Civ. 2295(GEL), 2007 U.S. Dist. LEXIS 73853, at *15-16 (S.D.N.Y. Oct. 2, 2007)).

For example, in Ayers v. SGS Control Services, Inc., No. 03 Civ. 9077 (RMB), 2007 WL 646326, at *5 (S.D.N.Y. Feb. 27, 2007), the court denied the defendant's motion for decertification even where the work performed by the plaintiffs, the location of the plaintiffs' employment, the plaintiffs' supervisors and the hours of work and method of pay all varied between class members.  In doing so, the court found that the plaintiffs had met their burden of showing, by a preponderance of the evidence, that "'their claims may be supported by generalized proof'" Id. (citing Scott v. Aetna Services, Inc., 210 F.R.D. 261, 265 (D. Conn. 2002); Wilkes v. Pep Boys, No. 3:02-0837(AAT), 2006 WL 2821700, *3 (M.D. Tenn. Sept. 26, 2006) ("One of the factors material to many courts' analysis of the plaintiffs' factual and employment settings is whether they were all impacted by a single decision, policy or plan.  The existence of this commonality may assuage concerns about plaintiffs' otherwise varied circumstances.") (internal citations and quotations omitted).  The Ayers court specifically held that "the differences among the plaintiffs do not outweigh the similarities in the practices to which they claim to have been subjected." Ayers, 2007 WL 646326, at *5.

In this case, Plaintiff contends that Defendant violated the FLSA in a way which was nearly identical to all Class Members. (Datoo Dec. Ex. F).  Namely, despite the fact that the Class Members may have had varying responsibilities, Plaintiff alleges that they were all denied the minimum wage and/or overtime for all hours worked in excess of 40 in a single workweek.  These similarities outweigh any differences among the Class Members because their claims are all supported by proof, described in detail in Plaintiff's motion for conditional certification, that Defendant had a policy and practice of failing to pay them in accordance with the FLSA.  Again, and importantly, Defendant does not object to certification for the purposes of the approval of the Settlement Agreement. (Datoo Dec. Ex. A).

8

2.       **Individualized Defenses**

Defendant has consistently denied liability for any violations of the FLSA. (Datoo Dec.

Ex. G).  In doing so, Defendant contends that it paid its Undergraduate and Graduate Assistants

the minimum wage and overtime for hours worked in excess of 40 in a single workweek. (Datoo

Dec. Ex. G).   At this point in time, there is no record suggesting that Defendant will assert

varying and individualized defenses against each Class Member.   In fact, Defendant has

indicated the possible existence of a specific defense only with respect to Plaintiff's claims;

namely, that she allegedly falsified certain time sheets. (Datoo Dec. Ex. K).   However, that

"some plaintiffs admit[ted] falsifying time sheets or overstating their hours," did not preclude

certification in Ayers. 2007 WL 646326, at *5.  Despite the fact that the defendants intended to

bring individualized defenses in Ayers, the court held that "to the extent Defendants present

individual defenses, 'the Court may grant collective action and bifurcate trial, as necessary, to

address those defenses.'" Id. at *6 (citing Torres, 2006 WL 2819730, at *11 n. 10).

3.       **Fairness And Procedural Considerations**

In determining "fairness and procedural considerations," courts consider "whether a

collective action would 'lower costs to the plaintiffs through the pooling of resources,'

'efficiently resolve[ ] common issues of law and fact,' and 'coherently manage the class in a

manner that will not prejudice any party...'" Ayers, 2007 WL 646326, at *6 (quotations and

citation omitted).  Accordingly, "where  common questions predominate and individual issues

may be resolved separately" courts will find that "the policy objectives of reducing cost and

increasing efficiency are best furthered by granting collective action without undue prejudice to

any party." Id, at *6 (citing Torres, 2006 WL 2819730, at *11).

In this case, common questions predominate.  These questions include, but are not limited to, whether Defendant had a policy and practice of not paying its Undergraduate and Graduate Assistants the minimum wage and/or overtime for hours worked in excess of 40 in a single workweek.  If the collective action is not certified, 260 individual actions could potentially be filed to seek an answer to these questions.  This will not only be extremely inefficient, but will also risk Defendant being subjected to conflicting obligations.  Maintaining certification of this FLSA collective action will avoid the cost, inefficiency and duplicity of 260 separate actions.

In sum, all three factors weigh in favor of one FLSA collective action rather than 260 separate actions.

## II.     The Proposed Settlement Is Fair, Reasonable, Adequate, And Should Be Approved

Importantly, "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement." Willix v. Healthfirst, Inc., 07 CIV. 1143 (ENV)(RER), 2011 WL 754862, *5 (E.D.N.Y. Feb. 18, 2011).  Courts approve FLSA settlements "when they are reached as a result of contested litigation to resolve *bona fide* disputes." Id.  Indeed, "courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." Id.  If the proposed settlement reflects a "reasonable compromise over contested issues, the settlement should be approved." Id; see also Khait v. Whirlpool Corp., 06-6381 (ALC), 2010 WL 2025106, *6-7 (E.D.N.Y. Jan. 20, 2010); Diaz v. Scores Holding Co., Inc., 07 CIV. 8718 (THK), 2011 WL 6399468, *2 (S.D.N.Y. July 11, 2011).

Given this standard, it is clear that the Settlement Agreement should be approved.  Each party vehemently contested the other's claims.  The adversarial nature of the proceedings is evidenced by the amount of discovery and motion practice that was undertaken by the parties.

Furthermore, there were two separate arm's-length mediations that occurred between the parties. (Datoo Dec. ¶ 19).  The last mediation directly resulted in a settlement. (Datoo Dec. ¶ 19). During the pendency of this action, all parties were represented by experienced and sophisticated counsel.  Accordingly, the compromise is reasonable and should be approved for this reason alone.

Although FLSA actions are not subject to the same heightened scrutiny as Rule 23 actions, FLSA cases are often paired with Rule 23 cases, and therefore, courts often use Rule 23 case law in analyzing the fairness of an FLSA settlement.  In an abundance of caution, Plaintiff will demonstrate the fairness of the settlement by showing that it meets the heightened Rule 23 standard as well as the already articulated reasonable compromise standard.  In deciding whether to approve a settlement under Rule 23, courts consider the fairness of the settlement by looking at the negotiating process that led to the settlement and the substantive settlement terms. See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005).

## 1.     The Proposed Settlement Is Procedurally Fair

A presumption of fairness arises where a settlement was "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." Wal-Mart Stores, 396 F.3d at 116 (internal quotation omitted).  Relevant factors include, "[t]he experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves." Hicks v. Morgan Stanley & Co., No. 01-Civ-10071(RJH), 2005 WL 2757792, *5 (S.D.N.Y. Oct. 24, 2005) (internal quotation and citation omitted).  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." In re EVCI Career Colls. Holding Corp. Sec. Litig., No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

In this case, both counsel are highly experienced in litigating complex wage and hour actions.  As the parties engaged in extensive, arm's length negotiations with the help of an impartial, experienced wage and hour mediator, the settlement is entitled to a presumption of fairness and adequacy.

## 2.  The Proposed Settlement Is Substantively Fair

Courts in this Circuit review a proposed settlement agreement for substantive fairness according to the following factors set forth in City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery contemplated; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the Defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation.

### i.  *Litigating Through Trial Would Be Complex, Costly, And Long (Grinnell Factor 1)*

To assess the substantive fairness of a settlement, courts weigh the benefits of a potential settlement against the time and expense of continued litigation. See Maley v. Del Global Tech. Corp., 186 F. Supp. 2d 358, 361-62 (S.D.N.Y. 2002).  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000).  If this case continues, there will be significant costs that will deplete any recovery, including numerous depositions, further document production and review, substantial motion practice (motion for decertification, motion for summary judgment), trial, and possible appeals. This will result in significant costs and delay in the resolution of this case.

ii.     *The Reaction Of The Class Has Been Positive (Grinnell Factor 2)*

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." Maley, 186 F. Supp. 2d at 362-63. Where relatively few class members opt-out of or object to the settlement, the lack of opposition supports approval of the settlement. See In re Sony SXRD Rear Projection Television Class Action Litig., No. 06-Civ. 5173(RPP), 2008 WL 1956267, *6 (S.D.N.Y. May 1, 2008).  In this case, no Class Member objected to the settlement and only 2 Class Members opted out. (Datoo Dec. ¶ 17).

iii.    *Discovery Has Advanced Far Enough To Allow The Parties To Resolve The Case*
        *(Grinnell Factor 3)*

Courts also consider how far the litigation has progressed and the amount of discovery completed to gauge whether the parties are sufficiently informed to enter into a fair and adequate settlement. See Maley, 186 F. Supp. 2d at 363-64.  Courts look at whether the "parties conducted sufficient discovery to understand their claims and negotiate settlement terms." In re Sony SXRD, 2008 WL 1956267, at *7.   In this case, Class Counsel entered into the proposed Settlement Agreement with a thorough understanding of this case.  Defendant provided Plaintiff with extensive documents, which Class Counsel reviewed and discussed with Plaintiff and Defendant's counsel.  Consequently, Class Counsel was able to properly evaluate the strengths and weaknesses of the claims and defenses.

iv.     *The Risk Of Establishing Liability (Grinnell Factor 4)*

Courts note that, regardless of the perceived strengths of a plaintiff's case, liability is "no sure thing." Wal-Mart Stores, 396 F.3d at 118.  As discussed above, Defendant asserted legal and factual defenses to the underlying claims in this lawsuit.  There are numerous disputed issues of fact, such as whether Defendant paid Class Members for all hours worked at the appropriate rate

of pay.  This makes establishing liability risky for the Class Members, especially considering that jurors would be required to review and analyze a substantial amount of complicated documentary evidence.  Further, juries are unpredictable.  The proposed Settlement Agreement is therefore preferable to costly, protracted litigation, which could potentially result in a smaller per-plaintiff recovery.

v.    *The Risk Of Establishing Damages (Grinnell Factor 5)*

Courts also consider the risks associated with establishing damages at trial.  Indeed, regardless of the ability to establish liability, the Class Members still face "substantial risks in proving [] damages at trial." In re Painewebber Ltd. P'ships Litig., 171 F.R.D. 104, 128 (S.D.N.Y. 1997); see also Wal-Mart Stores, Inc., 396 F.3d at 119.

The Class Members may have difficulty establishing the full extent of class-wide damages at trial.  For example, some of their alleged damages are not reflected in Defendant's records because it did not keep timesheets for employees who worked in a stipend position.  These damages would have to be established through testimony at trial.  Furthermore, there is a large risk inherent in asking the jury to pour through countless documents in order to calculate damages.  Therefore, the value of the Class Members' claims could be significantly impacted by the jury's assessment of the Class Members' credibility and/or the reasonableness of Defendant's explanations.  Moreover, "damages are a matter for the jury, whose determinations can never be predicted with certainty." In re Painewebber, 171 F.R.D. at 128; see also Maley, 186 F. Supp. 2d at 365 (recognizing that a jury may award plaintiffs only a fraction of their alleged damages).

vi.    *Establishing A Class And Maintaining It Through Trial Would Not Be Simple (Grinnell Factor 6)*

Courts consider whether a class is already certified, whether plaintiffs will move for class certification, whether defendants will oppose it, and whether the class should be decertified.

D.S. v. N.Y. City Dep't. of Educ., 255 F.R.D. 59, 78 (E.D.N.Y. 2008); Glover v. Crestwood

Lake Section 1 Holding Corp., No. 89 Civ. 5386 (MJL), 1991 WL 64172, *6 (S.D.N.Y. Apr. 10,

1991).  Given the vehemence with which Defendant opposed conditional certification, including

its three separate efforts to prevent certification, it is very likely Defendant would move to

decertify during this litigation. (Datoo Dec. Exs. H, K, L).  This certification process will be

time-consuming and costly.  Although Class Counsel believes that the Court would certify the

action as a collective action, there is a possibility that the class could be decertified.

vii.   _Defendants' Ability To Withstand Greater Judgment (Grinnell Factor 7)_

Whether Defendant can withstand a greater judgment is unclear at this time, but even if it

could, that fact would not suggest that the settlement is unfair.  See In re MetLife

Demutualization Litig., 689 F. Supp. 2d 297, 339-40 (E.D.N.Y. 2010) ("Courts have recognized

that the defendant's ability to pay is much less important than other factors, especially where 'the

other Grinnell factors weigh heavily in favor of settlement approval.'") (citing In re Global

Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 460 (S.D.N.Y. 2004)).

viii.   _The Settlement Fund Is  Substantial In Light Of The Possible Recovery And The_
        _Attendant Risks Of Litigation (Grinnell Factors 8 and 9)_

The two final Grinnell factors can be considered together. In re Sony SXRD, 2008 WL

1956267, at *8.  "The most important factor in the court's assessment of the proposed settlement

is the 'strength of the case for plaintiffs on the merits, balanced against the [relief] offered in

settlement.'" D.S., 255 F.R.D. 59, at *78 (quoting Grinnell, 495 F.2d at 455).  The determination

of whether a settlement amount is reasonable "does not involve the use of a mathematical

equation yielding a particularized sum.  Instead, "there is a range of reasonableness with regard

to a settlement – a range which recognizes the uncertainties of law and fact in any particular case

and the concomitant risks and costs necessarily inherent in taking any litigation to completion. Frank v. Eastman Kodak Co., 228 F.R.D. 174, 186 (W.D.N.Y. 2005).

The Class Members face substantial risks in proving and collecting their best possible recovery.  The Settlement Agreement provides the significant benefit of an immediate and substantial payment to the Class Members rather than "speculative payment of a hypothetically larger amount years down the road." Teachers' Ret. Sys. v. A.C.L.N. Ltd., No. 01–CV–11814(MP), 2004 WL 1087261, *5 (S.D.N.Y. May 14, 2004).  The settlement amount recovered, *after* attorneys' fees, costs, enhancement awards, and the estimated administrator's costs are deducted, allows Stipend Class Members to recover approximately 44% their gross compensation, Hourly Class Members to recover approximately 14% their gross compensation, and Class Members who held both positions to recover approximately 25% their gross compensation. (Datoo Dec. ¶ 16)

## III.     The Notice To Class Members Is Proper

Under Rule 23(c)(2)(B), "the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connections with the proceedings." Wal-Mart Stores, Inc., 396 F.3d at 114 (internal quotation omitted).  Notice is "adequate if it may be understood by the average class member." 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11:53, p.167 (4th ed. 2002).  In the Order granting preliminary approval, the Court noted that the proposed Settlement Notice was "the best notice practicable under the circumstances," and that the notice "fairly and adequately advise[d] the class member of the terms of the settlement, as well as the right of members of the class to opt out of the class, to object to the settlement, and to appear at the fairness hearing." (Datoo Dec. Exs. B, C)

## IV.   The Party Plaintiffs Merit The Proposed Enhancement Awards

Subject to the Court's approval and pursuant to the Settlement Agreement, separate payments are to be awarded of $5,000 to Plaintiff and $1,000 to each of the other three Party Plaintiffs. (Datoo Dec. Ex. A).  In considering whether to grant an enhancement award in a class action, a court will consider:

> [t]he existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and of course, the ultimate recovery.

Frank, 228 F.R.D. at 187 (internal quotation omitted).  Incentive "awards are particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus . . . [s]he has, for the benefit of the class as a whole, undertaken the risks of adverse actions by the employer or co-workers." Id.

The Party Plaintiffs spent considerable time and effort assisting Class Counsel in this matter, and were instrumental to its initiation and investigation. (Datoo Dec. ¶ 20).  They each reviewed documents, explained the relevant and necessary factual information to Class Counsel, and helped evaluate Defendant's defenses. (Datoo Dec. ¶ 20).  They also all participated in responding to Defendant's discovery requests. (Datoo Dec. ¶ 20).  Plaintiff played a particularly crucial role in obtaining an excellent result for the Class Members, spending hours with Class Counsel reviewing voluminous documents. (Datoo Dec. ¶ 20).

The enhancement payments total only $8,000.  This is modest in comparison with those approved by other courts as they represent only 4% of the NSA. See, e.g., Frank, 228 F.R.D. at 187-88 (awarding an incentive payment of 8.42% of $125,000 settlement to one

individual).Because of their time and assistance, enhancement awards to Plaintiff and the Party

Plaintiffs are appropriate and justified as part of the overall settlement.

## V.   Class Counsel's Attorneys' Fees Should Be Approved

The FLSA specifically authorizes the recovery of attorneys' fees and costs. 29 U.S.C.

§216(b).   An award of attorneys' fees has the three-fold benefit of: (1) "providing just

compensation," (2) "encourage[ing] skilled counsel to represent those who seek redress for

damages inflicted on entire classes of persons," and (3) "discourage[ing] future misconduct of a

similar nature." In re Telik, Inc. Sec. Litig., 576 F Supp. 2d 570, 585 (S.D.N.Y. 2008).   Courts

are permitted to calculate reasonable attorneys' fees by the lodestar method. Goldberger v.

Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000).   Under this method, "the district court

scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and

then multiplies that figure by an appropriate hourly rate." Id. at 47.   Once that calculation is

complete, the court has the discretion to "increase the lodestar by applying a multiplier based on

'other less objective factors,' such as the risk of the litigation and the performance of the

attorneys." Id.   The fee must be "reasonable," and "[w]hat constitutes a reasonable fee is

properly committed to the sound discretion of the district court." Id.

In the Second Circuit, the lodestar method has been re-defined as the "presumptively

reasonable fee calculation." See VVP Maliza v. 2011 MAR-OS, No. 07 Civ. 463 (ERK)(VVP)

2011 WL 502955, at *2.   Courts must now "'bear in mind *all* of the case-specific variables that

we and other courts have identified as relevant to the reasonableness of attorney's fees in setting

a reasonable hourly rate.'" Id. (citing Simmons v. New York City Transit Authority, 575 F.3d

170, 172 (2d Cir. 2009)) (emphasis in original).   "Those factors include the so-called Johnson

factors (taken from Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir.1974)) . . . as

well as the recognition that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively . . . ." Id. citing (Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008)).   However, "the presumptively reasonable fee is still to be determined by reference to the number of hours reasonably expended on a matter and the reasonable fee to be charged for those hours." Id. (citing Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009)).

Under the Settlement Agreement, the parties agreed that Class Counsel would receive no more than Two Hundred Eighty Five Thousand ($285,000) for attorneys' fees and costs, with any unapproved amounts reverting back to Defendant. (Datoo Dec. Ex. A).   This amount was negotiated and agreed upon at mediation only after the NSA amount was negotiated and agreed upon at mediation. (Datoo Dec. ¶ 19).   Thus, there was no risk that the interest of Class Counsel in obtaining its fees adversely affected the settlement amount that was procured for the Class Members. See Cisek v. National Surface Cleaning, Inc., 954 F. Supp. 110, 110-11 (S.D.N.Y. 1997) (expressing concern regarding the simultaneous negotiation of relief and attorneys' fees in the settlement of class actions).   Furthermore, the fact that the attorneys' fees agreed upon by the parties exceed the Class Members' recovery in the case is of no matter. See Allende v. Unitech Design, Inc., 783 F Supp. 2d 509, 511-12 (S.D.N.Y. 2011).   "In FLSA cases, like other discrimination or civil rights cases, the attorneys' fees need not be proportional to the damages plaintiffs recover, because the award of attorneys' fees in such cases encourages the vindication of Congressionally identified policies and rights." Id. (collecting cases).   Where both parties have knowledge of how attorneys' fees are calculated within the district, and the fees are negotiated at arm's length, courts should be reticent to disapprove settlements. See Misiewicz v. D'Onofrio General Contractors Corp., No. 08 CV 4377(KAM)(CLP), 2010 WL 2545439, *5 (S.D.N.Y.

May 17, 2010) (stating same in a single plaintiff FLSA action, which also requires court approval).

In light of the substantial time and resources expended by Class Counsel in prosecuting this lengthy and hard-fought case, it is clear that the Class Members benefited greatly from retaining Class Counsel with significant skill and expertise in employment and wage and hour cases.  Class Counsel prosecuted this action with no guarantee that they would recover any attorneys' fees.  Moreover, the 1,332 hours of attorney and paralegal time expended on this case kept Class Counsel from working on other billable matters for which payment would have been guaranteed. (Datoo Dec. ¶ 22).  Ultimately, after more than four years of aggressive litigation, Class Counsel achieved a highly successful result for the Class Members.

As every aspect of the record in this case confirms, the prosecution of the Class Members' claims required an enormous expenditure of time, labor and resources on the part of Class Counsel over the course of more than four years.  Since Defendant appeared in this action, the parties have met, conferred and corresponded on numerous occasions regarding the legal and factual basis underlying the claims of the Class Members.  The parties also conducted substantial discovery, both formal and informal, prior to settling this action.  For example, approximately 2500 pages of documents were produced and reviewed by the parties. (Datoo Dec. ¶ 18).  The formal and informal discovery process provided relevant information that facilitated meaningful and productive settlement discussions, including two mediations.

The parties also engaged in substantial motion practice before agreeing to settle this case.  For example, Class Counsel made a motion to conditionally certify the class. (Datoo Dec. Ex. H).  After the motion was granted, Defendant made a motion to reconsider the decision and also

objected to the Report and Recommendation granting conditional certification. (Datoo Dec. Exs. K, L).

Based on the Class Counsel's assessment of the evidence produced by Defendant, the settlement amount recovered, *after* attorneys' fees, costs, enhancement fees and estimated claims administrator's fees are deducted, allows Stipend Class Members to recover approximately 44% their gross compensation, Hourly Class Members to recover approximately 14% their gross compensation, and Class Members who held both positions to recover approximately 25% their gross compensation. (Datoo Dec. ¶ 16).

Given the substantial recovery, reasonable paying clients in the shoes of the Class Members would certainly pay the fees requested by Class Counsel in this case (assuming the financial wherewithal to do so). If Class Counsel were to request attorneys' fees based on their regular billing rates, the fee request would be for upwards of $500,000. (Datoo Dec. ¶ 23-24). Indeed, the fee Class Counsel agreed to accept represents a reduction in both the hours expended on this litigation and the rates charged for those hours. (Datoo Dec. ¶ 22-24). The hourly rates that Class Counsel based its determination on are reasonably comparable with those charged by lawyers of like skill, experience and reputation practicing in the Eastern District of New York. See, e.g., Scott v. City of New York, 643 F.3d 56, 59-60 (2d Cir. 2011) (hourly rate of $550 held reasonable in FLSA suit); Pilitz v. Incorporated Village of Freeport, CV 07-4078 (ETB), 2011 WL 5825138, *7 (E.D.N.Y. Nov. 17, 2011) (approving rates of $425 for partner and $200 for junior associates). (Datoo Dec. ¶ 23).

Importantly, in Morgenstern v. County of Nassau, No. CV 04-58 (ARL), 2009 WL 5103158, *9 (E.D.N.Y. Dec. 15, 2009), Judge Lindsay approved a rate of $400 per hour for Douglas H. Wigdor and Scott B. Gilly, and a rate of $250 per hour for Christopher Davis, all of

whom worked on this case. (Datoo Dec. ¶ 23).  Judge Lindsay also approved a paralegal rate of $100 per hour for Class Counsel's paralegals. <u>Morgenstern</u>, 2009 WL 5103158, at *9. (Datoo Dec. ¶ 23).  The total value of the attorneys' fees, even when using previously approved and lower than typical billing rates, for all of the time expended on this case, is $293,055. (Datoo Dec. ¶ 23). However, Class Counsel agreed to accept attorneys' fees in the amount of $279,009.51 and costs in the amount of $5,990.49.[6]  In fact, when this Court preliminarily approved the Settlement Agreement, it noted that "defendant does not oppose the amount of attorneys' fees sought, and the Court does not find them to be excessive on their face." (Datoo Dec. Ex. B).

**CONCLUSION**

For the reasons set forth above, the Class Members respectfully request that this Court: (1) certify the class for settlement purposes; (2) approve the enhancement awards for the Party Plaintiffs; (3) approve the full amount of attorneys' fees and costs requested; and (4) approve the Settlement Agreement.

Dated:  January 26, 2012
          New York, New York

Respectfully submitted,

THOMPSON WIGDOR LLP

Douglas H. Wigdor
Shaffin A. Datoo

85 Fifth Avenue
New York, NY  10003
Tel:  (212) 257-6800
Fax:  (212) 257-6845

Counsel for Class Members

---

[6]     Upon this Court's request, Class Counsel will make their contemporaneous billing records available for review.